## CAROLINE E. ACKERMAN *vs.* THE UNION AND NEW HAVEN TRUST COMPANY ET ALS.

Third Judicial District, New Haven, January Term, 1917.

RENTICE, C. J., THAYER, RORABACK, WHEELER and CASE, Js.

A testamentary trust which is by its express terms to continue during the lifetime of the beneficiary, cannot be terminated sooner by judicial decree, upon the theory that under the residuary clause of the will giving the corpus of the trust fund to "the next of kin," the beneficiary alone answered that description and therefore that she took an absolute and present title to the entire remainder interest.

The prayer for the termination of such a trust having been denied by this court upon a previous trial, the plaintiff beneficiary next sought to obtain what, under the English Judicature Act, is styled a "declaratory judgment or order," defining her precise legal status in its final relation to the trust fund, and the ultimate destination of the fund itself, in order that she might be enabled to intelligently make her own will. *Held:*—

1. That the courts of this State had no inherent power to extend an existing practice to meet the plaintiff's situation, or to create a new procedure to relieve it, in the absence of legislative authority; and that the rules of court neither attempted or suggested new remedies, nor the extension or curtailment of existing ones, but only sought to give effect to the real purpose of the Practice Act.

2. That the English rule invoked by the plaintiff (Rules of the Supreme Court, 1883, Order XXV, Rule 5, The Annual Practice, 1917, p. 431) not only had no direct bearing upon the case, but by its express terms was to be applied only at the discretion of the court whose aid was sought; and moreover, the jurisdiction thus con-

ferred was one which the English courts themselves had decided should be exercised with great caution, and not at all unless all interests involved were fully represented.

3. That even if Chapter 174 of the Public Acts of 1915, relating to actions for settling the title to real and personal property, could be regarded as affording a measure of relief substantially similar to that recognized in the English courts under their own procedure, it certainly could have no greater effective remedial working power.

4. That in the present case a determination of the plaintiff's rights would arbitrarily settle and determine, in effect at least, rights of unrepresented interests and possible interests of persons yet unborn; and therefore the relief sought could not be granted, under the recognized limitations of our existing practice and procedure; and moreover, that any seeming hardship of the plaintiff's position was chargeable not to any defects in our law or procedure, but solely to the restrictions imposed by the will of her own father.

Courts will not adjudicate matters involving conflicting rights and interests, until all persons directly concerned have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard; and because of the constitutional basis of this principle, it cannot be abrogated by remedial legislation.

A complaint which discloses upon its face a lack of essential parties and the impossibility of getting them before the court either actually or constructively at present, is open to demurrer.

Argued January 24th—decided February 26th, 1917.

Suit to secure a construction of the will of Theodore J. Ackerman of New Haven, deceased, brought to the Superior Court in New Haven County where demurrers to the complaint were sustained (*Curtis, J.*) and judgment rendered for the defendants, from which the plaintiff appealed. *No error.*

A former action between the same parties in the same relations to each other and to the subject-matter of the suit, has been adjudicated here and reported. *Ackerman* v. *Union & New Haven Trust Co.*, 90 Conn. 63, 96 Atl. 149. The detailed statement preceding the opinion in that case embraces all the facts upon which the present complaint rests. Reference is therefore made to it, without reprinting it in this connection.

In such respects as the plaintiff's present attitude in claiming a construction of the will involved differs from that disclosed in the former case, it is sufficiently indicated and discussed in the opinion.

Section 1 of Chapter 174 of the Public Acts of 1915 (p. 2003), upon which the plaintiff relies to secure the construction of the will, reads as follows: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the same, or any part thereof, or to have any estate in the same, either in fee, for years, for life, in reversion, or remainder, or to have any interest in the same; or any lien or incumbrance thereon, adverse to the plaintiff, or in whom the land records disclose any interest, lien, claim, or title conflicting with the plaintiff's claim, title, or interest, and whether the plaintiff is entitled to the immediate or exclusive possession of such property, for the purpose of determining such adverse estate, interest, or claim, and to clear up all doubts and disputes, and to quiet and settle the title to the same. . The complaint in such action shall describe the property in question and state the plaintiff's claim, interest, or title, and shall name the person or persons who may claim such adverse estate or interest. Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or incumbrance on, such property, or any part thereof, and, if so, the nature and extent of the estate, interest, or incumbrance which he claims, and he shall set out the manner in which and the sources through which such estate, interest, or incumbrance is claimed to be derived. No judgment for costs shall be rendered in such action against any defendant, who, by his answer, disclaims all estate or interest in or incumbrance on such property, but costs shall be taxed in his favor at the dis-

cretion of the court; and the court shall, in such cases, without futher proof, render judgment that such defendant has no estate, interest in, or incumbrance on such property, or any part thereof. The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills, or other instruments, or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes, and quieting and settling the title to such property."

*Henry Stoddard*, with whom was *James D. Dana*, for the appellant (plaintiff).

*George D. Watrous*, with whom was *Leslie N. Daniel* of New York, for the appellees (defendants).

CASE, J. The complaint in the former case sought both a construction of Mr. Ackerman's will and a termination of the trust created by it. It was obvious that the real relief pursued was an immediate termination of the trust and that a construction of the will was asked only to accomplish that result. The will was construed,—in so far as such action was incidentally necessary to determine the character and duration of the trust,—and both prayers for relief were denied; the former because the trust by its terms is one beyond the power of the courts to terminate during the life of Miss Ackerman, the plaintiff, and the latter because the complaint as it stood was solely "made to rest upon her claim of an absolute and present title [to the fund], and that this title be recognized by a termination of the trust, a release of the fund from its restrictions, and a surrender of it to herself." *Ackerman* v. *Union & New Haven Trust Co.*, 90 Conn. 63, 71, 73, 96 Atl. 149. In this situation and with a deci-

sion fixing the life of the trust as co-extensive with the life of Miss Ackerman, she was in no position to demand a present construction of the will, regardless of any relief in that direction which under more favorable circumstances she might possibly have claimed from the Act of 1915—her main reliance. We were not called upon to construe the broad terms of that Act under these conditions and plainly said so. The opinion went no further in discussing this legislation than to say that for the purposes of the case then under consideration, we might "assume that whether or not of limited application, it has a legitimate field of operation in its extended form." Ibid. p. 73.

The action now before us discloses another effort to bring the plaintiff within the purview and beneficial operation of that Act, and inasmuch as it has been frankly urged by her counsel in successive arguments in this court that the first purpose of this legislation was to secure to her this precise relief, it is not remarkable that she has attempted by a new action to cure a defect in her first complaint vital enough to have caused its dismissal without further regard to or discussion of the real scope and limitations of the Act itself.

Her present claim is this: Although by the decision in the earlier case the door has been closed to a termination of the trust during her lifetime, and she is thus barred from any possession or control of the fund, she is embarrassed in contemplated testamentary dispositions of her own, and in her present attitude toward certain New York real estate,—itself within the trust provisions,—because of uncertainties as to the ultimate destination of the fund upon the termination of the trust. If she can be definitely and authoritatively advised now whether this considerable fund will finally swell her own estate, or is likely to pass to others, she will be able to shape and carry out these testamentary

plans which are now contingent, in a practical sense at least, upon the uncertain turn of this event.

She therefore asks for what the rule of the English practice terms "a binding declaration of right," defining her precise legal status in its final relation to the trust fund, although she can clearly demand no consequential relief from our courts either now or during the conclusively settled life of the trust.

It is urged in support of this position,—but with perhaps an implied admission that the claim comes too late for recognition in this jurisdiction,—that our courts have and always have had inherent power to extend an existing practice to meet her situation, or even to create a new procedure to relieve it, quite without the aid of remedial legislation. This argument finds its emphatic answer in our long crystallized views of the proper limits of the judicial field in its relation to the other co-ordinate branches of government. Our courts have carefully avoided encroachments upon the functions of the legislature, and the rules of practice and procedure under the Practice Act and its amendments have been strictly limited to carrying this legislation into effect, and giving full practical operative force to its provisions. Neither new remedies, nor the extension or curtailment of existing ones have been attempted or suggested by the rules, and this is in manifest harmony with the restrictions which furnish the working method of our practice. "Of course such rules cannot alter the Act, they can only give effect to its real purpose." *Dunnett* v. *Thornton,* 73 Conn. 1, 6, 46 Atl. 158. If the courts are to exercise broader powers in this respect, the enlargement of their authority should come from legislative sanction rather than from judicial initiative.

But it is argued further that however this may be, our Act of 1915 which is invoked here for the plaintiff's

aid, is broad enough to cover cases recognized by the working rule of the English Judicature Act, already mentioned, and that our courts may similarly take jurisdiction of matters within the scope of that rule, and properly calling for "declaratory judgments," or "orders," even though no further or consequential relief dependent upon the declaration as pronounced, is properly demandable.

The plaintiff maintains that this construction voices the legislative intent behind the Act of 1915. We are not called upon by the needs of this case to pass upon that question, and express no opinion upon it. The recognition of such a proposition must suggest a novel departure from our established practice, the precise limitations of which are not easily defined. Such a construction cannot, in any event, aid the plaintiff in the situation which her present action discloses, and for the clearest reasons.

The English rule referred to is this: "No action or proceeding shall be open to objection, on the ground that a merely declaratory judgment or order is sought thereby, and the court may make binding declarations of right whether any consequential relief is or could be claimed, or not." Order XXV, Rule 5, Rules of the Supreme Court, 1883; The Annual Practice, 1917, p. 431.

While this rule of English procedure is without direct bearing here, so much was made upon argument of the claimed salutary advance in equity practice encouraged by it, and by our Act of 1915 in an asserted analogy to its scope, that attention may be profitably directed to some of its express and implied limitations. Clearly by its terms, action by the court whose aid is invoked is purely discretionary. The word "may" in this and all other rules under the Act is held to mean "may or may not." *Attorney-General* v. *Emer-*

*son*, L. R. 24 Q. B. D. 56, 58. It is also held in cases where the aid of the rule has been invoked that jurisdiction will be exercised with great caution (*Austen* v. *Collins*, 54 Law Times Rep. 903; *Faber* v. *Gosworth Urban District Council*, 88 Law Times Rep. 549) and the implication is clear from all the decisions that the attitude of the English courts is one of reluctance to proceed under the rule unless some substantial and tangible benefit can be forecast as a reasonable result, and not to proceed at all unless full recognition can be given to all directly involved rights through fair representation of them before the court. When it is remembered that vexatious or frivolous appeals for the rule's beneficial aid are not tolerated as within its spirit, it is apparent that the operative force of the English practice is so effectively safeguarded and controlled as to limit its application only to cases which invoke its active support as a matter of essential right.

At the most no greater latitude than this can be claimed for the effective remedial working power of our Act of 1915, even if it should be held that it affords a measure of relief substantially similar to that recognized in the English courts under their own procedure.

It may be conceded that there is something to be said in favor of resolving the uncertainty of one in the plaintiff's position,—if the situation is one which can be relieved by equity under the recognized limitations of our existing practice and procedure. But confessedly, relief on her behalf alone should not be undertaken if the rights of unrepresented interests or the possible interests of persons yet unborn must in effect be arbitrarily settled at the same time and by the same proceeding. It is idle to say that by a vague and nominal process of separation a court can now determine Miss Ackerman's interest and leave for future

settlement rights not now represented, but that may fairly demand a hearing at some later time. The necessities of the case and the character of the interests involved under the provisions of the will make the determination of the only question that can settle her status, a determination of each and every other interest involved,—at least in its primary and essential aspect.

This is the inherent difficulty and it exposes the radical unsoundness of Miss Ackerman's claim for the relief sought. Viewed from her own standpoint, her dilemma may be an uncomfortable one, but this is not chargeable to a weakness or defect in our law or system of procedure; it is chargeable, rather, to the arbitrary restrictions imposed by her father's will. These were quite within his power to impose, whether we regard them as unreasonable or not, and if they result in a seeming hardship to the daughter, it is not for us to disregard an equally serious possibility of ignoring interests not now represented, and as yet incapable of representation, but with a right commensurate in importance with her own, to be heard should they ever appear and assert it.

It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. This firmly fixed limitation, which, in effect if not technically in all cases, is a jurisdictional one, is as binding in English practice as it is with us. It is a principle safe from the reach of attack by remedial legislation because of its sound constitutional basis. The element of discretionary power is therefore really removed from

the situation presented by the complaint before us. It is quite apparent that the "may or may not" of the English courts' definition of discretion under their practice, has no reference to cases which disclose impassable jurisdictional difficulties at the outset, but rather gives the widest latitude to their control of the application of the rule even where all the necessary parties are within the court's reach. Where, as here, the admitted situation discloses at the start the unavoidable fact that all possible directly interested parties are not and cannot now be either actually or constructively before the court, a discretionary power to entertain the cause ceases in every practical sense to exist.

The complaint invited demurrer for this reason. Since the fault of a fatal lack of parties is as conclusively apparent from a reading of the complaint as it could be after a hearing on the facts, it was the duty of the trial court to dismiss it upon challenge of its sufficiency.

The assignment of error based upon the action of the trial court in expunging portions of the complaint, was not pursued upon the appeal. The expunged matter added no strength to the plaintiff's case in the view of it which we have taken.

There is no error.

In this opinion the other judges concurred.