WALTER A. BENZ, JR., ET AL. *v.* GEORGE J. WALKER ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued April 7—decided July 12, 1966

*Joseph T. Sweeney* and *Leo J. McNamara,* with whom, on the brief, was *Allyn L. Brown, Jr.,* for the appellants (plaintiffs).

*F. Michael Ahern,* assistant attorney general, with whom were *Carl D. Eisenman,* assistant attorney general, and, on the brief, *Harold M. Mulvey,* attorney general, for the appellees (defendants).

HOUSE, J. The plaintiffs are thirty-two state policemen who either failed to receive passing marks in oral examinations for the creation of eligibility lists for promotion in the state police department or who, although receiving passing marks, claim that their positions on the lists are such that they will not be certified for promotion during the life of the lists. The examinations were set up and con-

ducted by the state personnel department. The plaintiffs allege that the employment lists promulgated by the personnel department as a result of the examinations are illegal and invalid because the examinations were not conducted in accordance with the requirements of the applicable statutes. They sought a judgment declaring the lists invalid and coercive relief by way of injunctions prohibiting the state police commissioner from making any appointments on the basis of the lists and the state personnel director from using the results of the examinations in the formulation and promulgation of any employment list. Only the commissioner and the director were named defendants in the action. The Superior Court denied the relief sought, and the plaintiffs have appealed.

The record discloses that 182 candidates took the oral portion of the examination for sergeant and that eighty-five took the oral examination for detective. One hundred and six candidates received passing grades in the examination for sergeant, and fifty-five passed the examination for detective. Some passed both examinations. Of the thirty-two plaintiffs, eleven were successful in passing either or both examinations. Twenty-two state policemen who passed the oral examinations entered a general appearance in the case, and their attorney participated in the trial. Hence, at least 75 percent of those who passed were not parties to the action, and it does not appear that any attempt whatsoever was made to give them any notice of this suit.

Section 309 of the Practice Book expressly provides: "The court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or

have reasonable notice thereof." This rule has been in effect since 1922 (Practice Book, 1922, § 63) and was adopted following the enactment of chapter 258 of the Public Acts of 1921 (now General Statutes § 52-29), which for the first time provided for declaratory judgment actions with specific authorization for such judicial orders and rules as were deemed necessary to effectuate the provisions of the statute. In 1923, the constitutionality of the statute was upheld, and the rules adopted pursuant to its authority were approved by this court. *Braman* v. *Babcock,* 98 Conn. 549, 120 A. 150.

This rule is not merely a procedural regulation. It is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard. We had recent occasion to reiterate with approval in *Winick* v. *Winick,* 153 Conn. 294, 298, 216 A.2d 185, the words of this court in *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500, 508, 100 A. 22: "It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. This firmly fixed limitation, which, in effect if not technically in all cases, is a jurisdictional one, is as binding in English practice as it is with us. It is a principle safe from the reach of attack by remedial legislation because of its sound constitutional basis."

The simple requirements of the rule, with its provision for notice, are not as onerous as those imposed in most other jurisdictions, a majority of which require that all persons who have or claim an interest in the subject matter of an action for a declaratory judgment or who may be affected by the result must actually be joined as necessary parties. 26 C.J.S., Declaratory Judgments, § 122; 22 Am. Jur. 2d, Declaratory Judgments, § 80; note, 71 A.L.R.2d 723; Anderson, Declaratory Judgments (2d Ed.) § 130; Borchard, Declaratory Judgments (2d Ed.), pp. 132-36. The Uniform Declaratory Judgments Act, which has been adopted, at least substantially, in a majority of the states, expressly provides in § 11 that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." "As between such a provision as that in the uniform declaratory judgment statute we have quoted and the absence of any requirement that persons having a direct interest in the subject-matter of the action should be made parties, we have chosen the middle course. Under our rule all such persons even though their presence is not necessary to a decision of the issues between the parties of record are required either to be made parties or to have reasonable notice of the action. Where they are reasonably within the reach of process and are not so numerous that it would impose an unreasonable burden upon the plaintiff they should be made parties; but if they or some of them are not reasonably available for service or to summon them or all of them into the action would put upon the plaintiff a burden he ought not fairly to be asked to assume, the provision for reasonable notice applies. The plaintiff may often accomplish

the purpose intended by making parties defendant some of the other persons affected as representing all and securing authority from the court for them to defend in behalf of all. General Statutes [Rev. 1930], § 5519 [now General Statutes § 52-105]. Unless all persons who are interested in the subject-matter complained of are made parties, the plaintiff should apply to the court for such an order of notice to all those interested as would constitute reasonable notice to them." *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 484, 196 A. 344. "We have consistently insisted on a strict observance of this rule." *Wenzel* v. *Danbury,* 152 Conn. 675, 677, 211 A.2d 683; see *Riley* v. *Liquor Control Commission,* 153 Conn. 242, 249, 215 A.2d 402; *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 270, 205 A.2d 774; *Brewster* v. *Brewster,* 152 Conn. 228, 236, 206 A.2d 106; *Leo Foundation* v. *Cabelus,* 151 Conn. 655, 658, 201 A.2d 654; *Connecticut Society of Architects, Inc.* v. *Bank Building & Equipment Corporation,* 151 Conn. 68, 77, 193 A.2d 493; *Corsino* v. *Grover,* 148 Conn. 299, 309, 170 A.2d 267; *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 217, 83 A.2d 177; *Fisher* v. *Kallenbach,* 135 Conn. 147, 149, 62 A.2d 336; *Brennan* v. *Russell,* 133 Conn. 442, 445, 52 A.2d 308.

Since all of the candidates who were successful in the examinations are not parties to this action or were not given notice of its pendency pursuant to the express requirements of Practice Book § 309 (d), their rights cannot be adjudicated in these proceedings. Nor does due process of law permit the fruits of their success to be destroyed without notice and an opportunity to be heard. We have, therefore, no occasion to consider further the appeal from the judgment which found the issues

for the defendants. *Holt* v. *Wissinger,* 145 Conn. 106, 113, 139 A.2d 353. Since the plaintiffs' request for a declaratory judgment must be dismissed, it follows that their claims for injunctive relief must likewise fail. Such relief is, in this case, merely incidental or ancillary to their claim for a declaration that the promotional examinations and resulting employment lists are invalid.

There is no error.

In this opinion KING, C. J., and ALCORN, J., concurred.

MURPHY, J. (concurring). I concur in the result because of the failure to cite in the successful candidates other than the twenty-two who appeared generally. I do so with great reluctance because I am convinced that the examinations did not conform to the statutory requirements. Were it not for the failure to join the necessary parties, the results should be nullified and new examinations ordered. Had proper procedure been followed and all interested candidates notified, this court would, I am satisfied, declare the 1964 oral examinations invalid.

Following a request from the state police commissioner to establish an employment list for sergeants and an employment list for detectives from which the commissioner could make appointments to those positions, the state personnel department conducted a written examination of the eligible members of the police department who sought to qualify for either one or both employment lists. In response to a request from the personnel department, the heads of the state police departments in six sister states provided the services of three captains and three lieutenants from their departments as qualified examiners to conduct oral examinations for these

positions. Two of the six had served previously in this state as examiners.

Prior to October 5, 1964, the date the examinations started, the personnel department had provided each of the examiners with an eight-page printed booklet entitled "A Guide for Oral Examiners." It contained a general discussion of the oral interviewing procedure and of the general criteria to be applied in the oral examinations. On the morning of October 5, the six examiners were briefed by Robert G. Mack, chief of the examination and recruitment division of the personnel department, by Bernard McGrevy, the personnel technician who was to be in charge of the oral examinations, and by Leslie Williams, a major in the state police department and the executive officer of that department. Mack urged the examiners to widen the range of their marks so that there would be some high scores and some low ones so as to eliminate bunching with resultant tie scores. He also urged them to mark as though they were employing the particular candidates for work under them. Major Williams stated that the police department was seeking men who would demonstrate the qualities of leadership, forcefulness, ability to think on their feet, and ability to express themselves, and whose personalities would appear to be pleasing or acceptable to the examiners with their knowledge of what was required in police operations. He spoke to them of the duties to be performed by a sergeant but said very little about the duties of a detective.

McGrevy had also prepared the written examination. He testified that the oral examiners were informed that they would be divided into two panels of three each and would sit simultaneously in adjoining rooms to examine the candidates as they

appeared one at a time before them. Their attention was directed to the printed guide which had been sent to them, and they were told how the rating sheet was to be used. McGrevy instructed them on the mechanics of the examination and informed them that on the first morning each panel of examiners was to examine the first three candidates in each room before rating any of them, and, after the third man had left the room, the examiners would individually determine the grades to be given to each of the three candidates for each part of the two-part oral examination as it was set out on the rating sheet. They were free to discuss these ratings and to change their own rating if they desired to so do. The technician would then average the individual grades given to obtain the resultant composite score for each of the candidates. Both in the oral instructions to the examiners and in the printed guide, each panel of examiners was directed to use the first three men appearing before each panel as a standard of comparison for the ratings to be given to all of the candidates who were to be tested.

Upon the completion of the instructions, the examiners were divided into two panels, and one of the two examiners who had previously acted as an examiner in Connecticut was assigned to room A and the other to room B. McGrevy acted as technician for the panel in room A, and Victor I. Harris, another personnel technician, was assigned to the panel in room B. The technicians were to introduce the candidates, operate a recording device and mark down on a rating sheet the final score received by each candidate. These were the only formal markings made in the examination rooms which were kept by the personnel department. The scratch sheets which were provided to and were

used by the examiners in determining the marks each gave were destroyed. The individual blank rating sheets which each examiner had were used for reference and were not marked by the examiners with the grades given by them.

The examinations were scheduled so that no candidate was examined by more than the three examiners in the panel to which he was assigned. The membership of each panel changed each half day with one member of each group switching places. Under this rotation system, no two panels were made up of the same three examiners.

The first candidates examined were those who applied for both the position of sergeant and the position of detective. The examinations for both positions were given simultaneously. Eleven candidates were examined by each panel on Monday morning, October 5. All eleven in room A passed both examinations with each person receiving the same mark for sergeant as he received for detective. Of the eleven in room B, three were successful in both examinations, one passed the sergeant's examination but failed the one for detective, and one other passed the detective's examination but failed the one for sergeant. In view of the stress which the plaintiffs have placed on the fact that the panel in room A gave the same passing mark to each candidate for sergeant as it gave him for detective, it is noted that in room B seven of the eleven received similar treatment but only two of these passed. One who qualified for both lists received different grades as did the two who passed but one of the examinations.

After the noon recess on Monday, one examiner from room A exchanged places with one of the examiners in room B. Nine candidates were exam-

ined in each room that afternoon. The nine in room A all passed, while five passed in room B and four failed. The examinations continued on Tuesday, Wednesday and Thursday and on Friday morning with the membership of the panels changing each morning and noon. In all, eighteen different panels were used. The results varied. Prior to Friday, each panel examined the same number of men. On Friday, sixteen were examined in room A but only six in room B. All of the latter passed, whereas in room A only 50 percent were successful. The final tabulation showed that 106 men qualified for the sergeants' list and fifty-five for the detectives' list.

The positions of sergeant and detective in the state police department are in the "classified service" of the state and promotions to those positions can be made only according to merit and fitness, to be ascertained by examinations which must be competitive. General Statutes § 5-1. These examinations shall be in such form and of such character and shall relate to such matters as will fairly test and determine the qualifications, fitness and ability of the persons tested to perform the duties of those positions and shall be competitive. General Statutes § 5-26. The use of the word "competitive" in both of these statutes indicates clearly that actual competition between the candidates is the foundation on which the merit system rests and that any examination which is not truly competitve fails to comply with the statutory requirement.

The oral examination was divided into two parts, and it was necessary for each candidate to get a mark of thirty-five in each part in order to attain a passing mark of seventy. The first part embraced the external aspects of personality and was to evaluate the appearance, manner, speech, maturity and

vitality of the candidate. The second part was to reflect the internal content of the candidate's mental powers such as judgment and quickness and clearness of comprehension. In evaluating these characteristics of the various candidates, the examiners were directed to use the first three candidates examined in each room on Monday morning as the standard of comparison from which to determine the ratings of those three candidates as well as the others to be examined thereafter. Thus, the panel in room A had one standard to use, while the panel in room B had a different standard. When the makeup of the panels was changed Monday noon, two of the afternoon examiners in room A were using the standard decided upon in that room, while the third panelist was using the room B standard. The reverse of this situation governed the afternoon examination in room B. Owing to the fact that the membership of the panels changed each half day, there were eighteen different panels, no two of which could have been using the same standard. This arrangement creates the illegality in that these examinations were not competitive in the sense in which that term is used in the merit system legislation enacted to provide a civil service system for state employees.

"In a [civil service] competitive examination, the candidates match their qualifications, each against the others, and the final determination is made by rating and comparison." *State ex rel. King* v. *Emmons,* 128 Ohio St. 216, 221, 190 N.E. 468. In a competitive examination under civil service, the candidates are to participate against each other equally before the examiners in answering questions of like character and nature and to have equal opportunity in the oral discussion to compete each against the

other under like and similar conditions. *Civil Service Commission* v. *Frazzini,* 132 Colo. 21, 35, 287 P.2d 433. On the basis of these requirements, the candidates in these examinations were not competing with all of the others who were taking the examinations but only with those in their own particular group who appeared in that half-day session before that particular panel.

The rationale of the cases in other jurisdictions, including those cited above, as well as *Matter of Fink* v. *Finegan,* 270 N.Y. 356, 1 N.E.2d 462, *Matter of Sloat* v. *Board of Examiners,* 274 N.Y. 367, 9 N.E.2d 12, *Matter of Cowen* v. *Reavy,* 283 N.Y. 232, 28 N.E.2d 390, *Almassy* v. *Los Angeles County Civil Service Commission,* 34 Cal. 2d 387, 210 P.2d 503, and *Stoor* v. *Seattle,* 44 Wash. 2d 405, 267 P.2d 902, has been thoroughly explored. In the *Fink* case, which we cited with approval in *Howell* v. *Johnson,* 147 Conn. 290, 295, 160 A.2d 486, it was held (p. 361): "A test or examination, to be competitive, must employ an objective standard or measure.
. . . [p. 362] A definite standard may be formulated. . . . An [oral] examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience." In the *Sloat* case (p. 373), it was held that the test need not be wholly objective, and, to the extent that it is subjective, the result may depend as much on the fitness of the examiners as on the fitness of the candidates. All of these cases have been extensively reviewed in the *Almassy* case, which holds (p. 398) that, although measurable standards must be established for determining the general proficiency of the candidates for the partic-

ular position, the fact that some of the standards are subjective rather than objective does not prevent the oral examination from being classified as competitive. Where, as here, however, an objective standard is set up, i.e., the standard resulting from the comparison of the first three candidates examined, the same standard must be used throughout the entire examination in evaluating the merit and fitness of each and every one taking the examination. As already stated, there were eighteen different panels, and, with the changing membership, eighteen different standards resulted so that the essential competitive feature required by the statutes was thereby eliminated.

The plaintiffs also challenge the validity of these examinations on the ground that the personnel department did not have each examiner fill out a rating sheet of the grade he gave to each candidate and then retain the sheets so that they would be available for judicial review if the results were questioned. Although each examiner had blank rating sheets in his possession during the examinations, the examiners had not been requested to fill them out. Each examiner also had scratch pads to jot down his observations and markings, but these were not signed by the examiners and were not retained. The only official record of the mark obtained by each candidate was that made by the technician on a single master copy of the composite grade which he compiled as the average of the three grades stated to him by the examiners and then signed by them. Consequently, the individual ratings by the various examiners were not available for review by other examiners of equal ability and experience as those selected by the personnel department. *Matter of Cowen* v. *Reavy*, 283 N.Y. 232,

237, 28 N.E.2d 390; *Matter of Andresen* v. *Rice,* 277 N.Y. 271, 282, 14 N.E.2d 65; *Matter of Sloat* v. *Board of Examiners,* 274 N.Y. 367, 374, 9 N.E.2d 12; *Matter of Fink* v. *Finegan,* 270 N.Y. 356, 362, 1 N.E.2d 462. To obtain the proper functioning of the merit system, the safeguard of recognized standards shall be provided to ensure the candidates a uniform basis of rating, so far as possible, consistent with the subjects determined as appropriate for examination, and a record must be made showing the basis of the rating. *Almassy* v. *Los Angeles County Civil Service Commission,* 34 Cal. 2d 387, 404, 210 P.2d 503. The rights of the plaintiffs to a proper judicial determination of the fairness of the ratings received by them were unduly curtailed by the failure of the personnel department to require each examiner to mark and sign an individual rating sheet for each candidate and to retain the sheets a reasonable length of time to permit examination and review. Had the individual rating sheets of the examiners been available to the plaintiffs, it would not have been necessary for them to rely on the testimony of a professor in educational statistics who was an expert in psychometric analysis and through whom the plaintiffs attempted to get into evidence certain analyses made by him by statistical and computer comparisons of the results reached by some of the panels.

Mechanical recordings of all of the interviews of the candidates were made on a tape recorder or other similar equipment and were marked for identification at the trial. They were excluded as full exhibits. Although a review of these recordings would have imposed an onerous burden on the court, there was, in this case, no other adequate means of reviewing these examinations, and under these circum-

stances the ruling was erroneous. *Kelly* v. *Civil Service Commission,* 37 N.J. 450, 460, 181 A.2d 745; *Matter of Acosta* v. *Lang,* 13 N.Y.2d 1079, 1081, 196 N.E.2d 60; *Matter of Pearl* v. *Department of Civil Service,* 8 Misc. 2d 712, 713, 169 N.Y.S.2d 847, aff'd, 5 App. Div. 2d 739, 168 N.Y.S.2d 943. The master rating keys containing composite scores of each candidate should also have been admitted in evidence to permit proper review.

As Major Williams, the second-in-command and the executive officer of the state police department, has had extensive experience both within and without Connecticut as an examiner in similar tests, I cannot understand the statement in the defendants' brief that the major's experience would "not qualify him as an expert." I doubt that that opinion is shared by the state police commissioner, one of the defendants and the person who appointed the major to the very important post he holds.

I regret that under the circumstances we have to affirm the judgment below. One set of examiners should have conducted the sergeant's examination and a second set the detective's examination. The use of multiple panels of examiners destroyed the competitive feature of these examinations.

SHANNON, J. (concurring). I concur in the result insofar as the failure to cite in all of the interested parties or to give them reasonable notice of the action is concerned. I also concur in the concurring opinion of Justice Murphy that one set of examiners should have conducted the sergeant's examination and a second set the detective's examination. The use of the multiple panels of examiners, as employed here, destroyed the competitive feature of these examinations and rendered them invalid.