STANLEY V. TUCKER *v.* EDWARD C. MAHER ET AL.
(11374)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued December 1, 1983—decision released March 13, 1984

*Stanley V. Tucker,* pro se, the appellant (plaintiff).

*Wendell S. Gates,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (named defendant).

PER CURIAM. The plaintiff, Stanley V. Tucker, litigated this action in a four-count substituted complaint against Edward C. Maher, commissioner of income maintenance, and Sonia Brown.[1] The first count alleged that Maher wantonly and wilfully violated his duties

---

[1] The plaintiff alleged in the first count that Sonia Brown, a state welfare recipient, was a former tenant of his in Torrington who owed him rent for certain named months in 1976, that his demands for direct payment of the rent for Brown from the state welfare department under General Statutes § 17-2f were denied, that such denials were a direct result of "oral orders" by the defendant Maher to employees of that department not to make payments under § 17-2f, that Maher's orders were wilful and wanton and that punitive damages should be awarded. These allegations of the first count are repeated verbatim in the second count together with one additional allegation that Maher's ordering his "subordinate employees" not to deal with the plaintiff under § 17-2f is a violation of General Stat-

under General Statutes § 17-2f[2] in denying, through his departmental employees, the making of direct payments to the plaintiff for rents owed to him for specific periods by the defendant Brown, the plaintiff's tenant. The second count incorporated all of the allegations of the first count and further alleged that Maher's ordering his subordinate employees not to deal with the plaintiff under § 17-2f was a violation of General Statutes § 35-28 of the Connecticut Anti-Trust Act. In the third count, denominated a "Civil Rights Complaint for Declaratory Relief" under 42 U.S.C. § 1983, the plaintiff alleged that Maher, who was responsible for making direct mailings of rents to landlords under General Statutes § 17-2f, had, with his subordinate employees, refused to honor written assignments by tenants to the plaintiff of their rental allotment from the department on the ground that General Statutes § 17-82k prohibits

utes § 35-28 of the Connecticut Anti-Trust Act which provides for treble damages and reasonable attorney's fees.

The trial court found that no service of process had been made on the defendant Brown, that she had not appeared in the action and that she did not participate in the trial. It, therefore, found that it had no jurisdiction over her and dismissed the case as to her.

[2] General Statutes § 17-2f entitled "Direct payments to landlords" provides: "(a) In any case involving a tenancy from month to month or for a term of years calling for monthly rental payments, upon written complaint, under oath, made by the landlord of a social services recipient, to the district director of the social services district office handling the social services payment in such case, that such social services recipient has failed to make payment of rent for the current month, after ten days subsequent to the date when such rent was due, all subsequent rental payments, until the termination of the tenancy or until the tenant quits the premises, shall be made directly to the landlord, and the amount of such rental shall not be included in the payment made to such social services recipient.

"(b) Such written complaint shall be subscribed and sworn to by the landlord, shall state the name and address of the landlord, the name and address of the tenant, the term of the tenancy, the amount of the monthly rental and the date such rent became due and shall contain a statement that (1) the rent for the current month is due and owing; (2) the landlord has himself made a bona fide effort to collect such rent; (3) the landlord has notified or has made a bona fide effort to notify the tenant of his intention to seek payment of rents from the department of income maintenance; and (4) the

doing so.[3] It is also alleged that the plaintiff has received judgments for unpaid rent from state welfare recipients which he has been unable to execute because of the provisions of § 17-82k and "Plaintiff claims said judgments as damages." That count further recited in part that "[i]n this count Plaintiff seeks a declaratory order of this court holding Conn GS 17-82k unconstitutional and void for the following reasons . . . ." Among the reasons urged for its unconstitutionality are that (1) it "confiscates" private property without compensation because a major part of the welfare budget is misspent thus "confiscating" private property by diverting vital income needed to pay such things as utilities, taxes and mortgages; (2) it renders the summary process statute ineffective in preventing property owners from sustaining large rent losses because some welfare tenants do not use their rent allotments properly; and (3) it creates two classes of citizens who are treated unequally, i.e., welfare recipients who are allowed to misspend "hundreds of millions of dollars on [things] other than rent" and landlord vendors to welfare recipients who are entitled to rental payments for premises rented to welfare recipients but are denied the same because of § 17-82k. The fourth count, which is denominated a "Civil Rights Complaint for Declara-

nonpayment of rent is not the result of any act or omission on the part of the landlord. Such complaint shall be accompanied by a copy of the lease, if any, and a copy of the notice required by subdivision (3) hereof.

"(c) The provisions of this section shall include only direct payments made to landlords of recipients of public assistance when the total of such payments and all other vendor and protective payments [to such] . . . recipients made by the state department of income maintenance do not exceed [matching payments] . . . under federal law."

Subsection (c) of § 17-2f was added in 1971 by Public Acts 1971, No. 808.

[3] General Statutes § 17-82k (in Chapter 302 of the General Statutes which is entitled "Public Assistance") provides: "Aid provided under this chapter shall be inalienable by assignment, sale, attachment, execution or otherwise, and shall be subject to the provisions of any amending or repealing act that may be passed, and no beneficiary or other person shall have any vested right to any such aid."

tory, Injunctive Relief and for Damages" also alleged that it was brought under 42 U.S.C. § 1983. It alleged that Maher had personally chosen to discriminate "purposely and intentionally" against landlord vendors as a class of which the plaintiff is a member by the denial of all direct landlord vendor payments while making many millions of dollars in "direct vendor payments to other classes of vendors such as medical supplies and services, utilities, including hea[t], skilled nursing services and hospitals and other claims of medical treatment and/or care." This count further alleged that because of this claimed discriminatory practice, the plaintiff has and is suffering irreparable harm in loss of rents, inability to pay property taxes, mortgages and foreclosure costs and loss of property values. Finally, in this count, he sought a declaratory judgment that this claimed practice violated the fourteenth amendment to the United States constitution by its invidious discrimination and denial of equal protection of the laws, and he sought damages, including those punitive in nature.

After a trial to the court, it found for the defendants on all the issues. It dismissed the case as to the defendant Brown, concluding that because there had been no service of process upon her, and she had not appeared in the case or participated in the trial, it had no jurisdiction over her.[4] As to the second count, the trial court concluded that because the plaintiff had not proven the "factual allegations"[5] of the first count which had been incorporated into the second count, the plaintiff could not recover on the second count. On the record before

---

[4] The plaintiff does not challenge this ruling on this appeal.

[5] The trial court found that the evidence indicated that Sonia Brown "was not a tenant of plaintiff and was not a recipient of welfare during the periods set forth in the complaint" and that "there was no evidence that plaintiff even applied pursuant to Section 17-2f."

us this conclusion is not clearly erroneous.[6] The trial court rejected the claims made in the third count finding essentially that the challenged statute, § 17-82k, was constitutional and that it prohibited the direct payment of rent which the plaintiff claimed. In holding against the plaintiff on the fourth count, the trial court found that Maher had not " 'purposely and intentionally' chosen to discriminate against [the] plaintiff, but has denied direct payment in accordance with applicable law." Moreover, in stating that the plaintiff had not demonstrated that any of his civil or constitutional rights had been violated, it concluded that he was not entitled to any of the relief, statutory or equitable, which he sought under the fourth count.[7] This appeal followed.

---

[6] Moreover, we note that the plaintiff does not claim that he proved these "factual allegations."

[7] The defendant Maher had filed three special defenses to the plaintiff's substituted complaint. The first special defense, in effect, alleged sovereign immunity. The second special defense, interposed as to the third and fourth counts, claimed that inasmuch as these counts seek declaratory injunctive relief, "[t]his Court lacks jurisdiction . . . unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof in compliance with the Practice Book § 390 (d) and § 4-175 of Connecticut General Statutes." The third special defense alleged the lack of jurisdiction to entertain a cause of action under 42 U.S.C. § 1983 because of the failure to allege "all of the proper and necessary elements of such a cause of action."

The trial court stated that the doctrine of sovereign immunity would bar the plaintiff's cause of action under the first and second counts although it would not as to the constitutional questions sought to be raised under the third and fourth counts. It ruled that the declaratory relief sought under the third and fourth counts could not be granted because it upheld the defendant commissioner's claim that these counts were jurisdictionally defective as the plaintiff had not complied with General Statutes § 4-175 and Practice Book § 390 (d). It declined to rule on the third special defense.

After this discussion of these special defenses, the trial court, nevertheless, stated: "Although it may have been more appropriate to rule on jurisdictional and technical matters which might have been dispositive of the case, first, under the circumstances of this case, the court felt that it would serve the ends of justice best to rule on all of the essential issues raised."

On appeal, the plaintiff has raised and briefed a number of claims of error, the resolution of one of which we deem dispositive of this appeal. Preliminarily, however, we point out that we need to discuss only the third and fourth counts of the substituted complaint. The first count, as admitted in the plaintiff's brief, has not been appealed. The trial court correctly found, as we have noted, that the plaintiff could not prevail on the second count because he had not proven the "factual allegations" of the first count which had been incorporated verbatim into the second count.

Regarding the third and fourth counts, Maher interposed a special defense of lack of jurisdiction to give declaratory relief claiming that all persons having an interest in the subject matter of the complaint were not parties to the action or were not given reasonable notice of it in compliance with Practice Book § 390 (d) and General Statutes § 4-175.[8] Although it had reached and decided the merits of these two counts, the trial court, thereafter, concluded that the declaratory judgment sought could not be granted because the plaintiff had not complied with this statute by first requesting that the state agency "pass upon the order in question." The plaintiff claims that he has complied with General Statutes § 4-175 pointing to several exhibits of certified mailings to the welfare department over the years demanding direct payment of rent, including an affidavit "under G.S. 17-2f and certified letter requesting fair hearing from Commissioner [and] demand for hear-

---

[8] General Statutes § 4-175 provides in pertinent part: "The validity or applicability of a regulation or order of an agency may be determined in an action for declaratory judgment . . . if the regulation or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

ing . . ." to which he received no response from the state. He also argues that no more compelling compliance with § 4-175 is required nor could be proven and that the lack of response under § 4-176 is ample ground to allow a declaratory judgment. While maintaining that he has fully complied with § 4-175 and Practice Book § 390 (d), he argues that the statutory requirement in § 4-175 that "the agency shall be made a party to the action" is fully satisfied by suing Maher in his official capacity as commissioner and personally. Moreover, he claims that because these counts are brought under laws passed by the United States Congress in 42 U.S.C. § 1983, under the supremacy clause, such actions proceed even though Practice Book § 390 (d) is not complied with.[9]

On the other hand, the defendant argues that the evidence which the plaintiff introduced, i.e., the mailings

---

[9] This claim must be rejected. States may not discriminate against a federal cause of action and "are required to enforce federal law [under] the supremacy clause of article VI of the United States Constitution. *Testa* v. *Katt,* 330 U.S. 386, 67 S. Ct. 810, 91 L. Ed. 967 (1967)." *Household Consumer Discount* v. *Vespaziani,* 490 Pa. 209, 212, 415 A.2d 689 (1980). Once required by congressional action to provide a forum for the vindication of a right, "we must determine whether federal or state law governs the resolution of a given question concerning the federally created cause of action. . . ." *Household Consumer Discount* v. *Vespaziani,* supra, 212–13.

It is clear that the reference in the supremacy clause to the "Law of any state" (being subordinate to the "Constitution and laws of the United States") is not confined to state statutes but is construed broadly to guarantee the supremacy of federal law. *Lee* v. *Board of Higher Education in City of New York,* 1 B.R. 781, 787 n.7 (S.D.N.Y. 1979), citing *Standard Scale Co.* v. *Farrell,* 249 U.S. 571, 576, 39 S. Ct. 380, 63 L. Ed. 780 (1919) (Brandeis, J.). It has been said that the supremacy clause "prevents a state from frustrating even the spirit of a federal law." *Handsome* v. *Rutgers University,* 445 F. Sup. 1362, 1367 (D.N.J. 1978). It is clearly beyond the reach of reason and due process for us to agree that Practice Book § 390 (d), which provides for notice to interested persons in this case, violates the supremacy clause where a great number of persons having an interest have not been given notice. If anything, § 390 (d) is in keeping with the spirit of 42 U.S.C. § 1983 giving such persons notice and is compatible with fundamental due process. See, e.g., *Benz* v. *Walker,* 154 Conn. 74, 76, 221 A.2d 841 (1966).

referred to above demanding direct payment of rent and a request for a fair hearing, does not demonstrate, as claimed, his compliance with § 4-175 which provides: "The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder." He argues that the plaintiff's submissions are clearly not requests to the agency "to pass upon the validity or applicability of the regulation or order in question," nor was there any evidence of a request for a declaratory ruling and, therefore, that the plaintiff is in violation of the statute. The defendant also argues that a declaratory judgment could not be rendered because there was no compliance with Practice Book § 390 (d) which provides that "[t]he court will not render declaratory judgment . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." He urges that it is obvious that all persons having an interest in this matter have not been notified and that a determination that § 17-82k was unconstitutional would affect a "vast number" of people in this state. Finally, he argues that the plaintiff has not met the mandates of due process.

Even assuming without deciding that Maher's "order" to his departmental employees was, in effect, a "regulation or order" of his agency under the Uniform Administrative Procedure Act, and even assuming, without deciding, that the plaintiff complied with General Statutes § 4-176, we agree with the defendant's claim that the plaintiff has not complied with the mandate of Practice Book § 390 (d). "Section 390 (d) requires that all persons having an interest in the subject matter of the complaint be parties to the action

or have reasonable notice thereof. See *Pinnix* v. *LaMorte,* 182 Conn. 342, 343, 438 A.2d 102 (1980). This court has consistently required strict adherence to this rule. *Hopkins* v. *Pac,* 176 Conn. 318, 319, 407 A.2d 979 (1978); *Cavalli* v. *McMahon,* 174 Conn. 212, 215-16, 384 A.2d 374 (1978); *Gannon* v. *Sanders,* 157 Conn. 1, 5, 244 A.2d 397 (1968). 'A failure to comply with § 309 (d) [now § 390 (d)] is a jurisdictional defect and, as such, can be raised even on appeal by the court itself.' *Manley* v. *Pfeiffer,* 176 Conn. 540, 545, 409 A.2d 1009 (1979); see *Pinnix* v. *LaMorte,* supra; *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 527, 290 A.2d 327 (1971). Section 390 (d) is not merely a procedural regulation, '[i]t is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard.' *Benz* v. *Walker,* 154 Conn. 74, 77, 221 A.2d 841 (1966)." *Russo* v. *Watertown,* 184 Conn. 30, 33-34, 441 A.2d 56 (1981). It is clear that welfare recipients who are tenants and perhaps landlords may have a legitimate interest in the outcome of this case and they were entitled to notice. *Wenzel* v. *Danbury,* 152 Conn. 675, 677, 211 A.2d 683 (1965). "It should not be up to the plaintiff to determine that notice is unnecessary." *Cavalli* v. *McMahon,* 174 Conn. 212, 216, 384 A.2d 374 (1978); see *Gannon* v. *Sanders,* 157 Conn. 1, 5, 244 A.2d 397 (1968). "Moreover, the notice requirement of § 309 (d) [now § 390 (d)] is not limited to adverse parties. . . . Anyone with an interest in the subject matter is entitled to reasonable notice and an opportunity to be heard, whether he [or she] supports the [plaintiff's] or the [defendant's] position. . . ." *Cavalli* v. *McMahon,* supra; see *Hopkins* v. *Pac,* 176 Conn. 318, 319, 407 A.2d 979 (1978). "[W]hen the persons having a direct interest in the subject matter of a declaratory judgment action 'are reasonably within the reach of process and are not so numerous that it

would impose an unreasonable burden upon the plaintiff they should be made parties; but if they or some of them are not reasonably available for service or to summon . . . all of them . . . would put upon the plaintiff a burden he ought not fairly to be asked to assume, the provision for reasonable notice applies.' " *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 528, 290 A.2d 327 (1971); see *Benz* v. *Walker,* 154 Conn. 74, 78, 221 A.2d 841 (1966); *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 484, 196 A. 344 (1937). "Unless all persons who are interested in the subject-matter complained of are made parties, the plaintiff should apply to the court for such an order of notice to all those interested as would constitute reasonable notice to them." *National Transportation Co.* v. *Toquet,* supra; *Benz* v. *Walker,* supra, 79.

In oral argument before us, the plaintiff also claimed that § 390 (d) was not a bar to declaratory judgment relief because his right to that relief was "derivative," i.e., it came from his tenants whose rents he had the right to receive directly. He maintained that his "derivative" right precluded the necessity that the one from which the right was derived, i.e., the tenant, need be a party (or have reasonable notice) and, therefore, § 390 (d) was inapplicable. The authority cited by him for this claim is *Stavola* v. *Palmer,* 136 Conn. 670, 78 A.2d 831 (1950). This claim is wide of the mark. *Stavola* was a wrongful death action which concerned the right of an employer to reimbursement of workers' compensation which he had become obligated to pay and, inter alia, raised the question whether the employer's action was maintainable without citing in the personal representative of the deceased employee as a party. *Stavola* v. *Palmer,* supra, 672. There we said that it was "clear that [the statute involved] does not require an employer starting such an action to join the employee or the employee's personal representative as a party." Id.,

679. In *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 323, 435 A.2d 352 (1980), we observed, citing *Stavola,* that the workers' compensation statute, i.e., General Statutes § 31-293, gave the employer an "independent derivative action" to seek recovery for monies paid under it. There is no persuasive analogy here; we cannot accept the plaintiff's claim. Therefore, because the record does not show that all persons having a legitimate interest in the subject matter are parties to this action or were given reasonable notice thereof, the trial court was without jurisdiction over the third and fourth count.

There is no error as to the second count; there is error as to the third and fourth counts and the judgment is set aside and the case is remanded with direction to dismiss the third and fourth counts for lack of jurisdiction.[10]

---

[10] Along with his prayer for declaratory relief, the plaintiff also sought damages, attorney's fees and such further relief as the court deemed proper. These claims must fall with the claim for a declaratory judgment as they are merely ancillary to it. *Pinnix* v. *LaMorte,* 182 Conn. 342, 343, 438 A.2d 102 (1980); *Clough* v. *Wilson,* 170 Conn. 548, 556, 368 A.2d 231 (1976).