[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Henry Benham and Mary Ann Benham, bring this action seeking a declaratory judgment as to the meaning of a restrictive covenant in certain deeds to property conveyed by Roy Rude. They also seek a reformation of the deeds to reflect what they claim to have been the intent of the parties at the time the deeds were prepared. The second count of the complaint was withdrawn in open court during the trial. In their third count, CT Page 208 the plaintiffs allege fraud and misrepresentation.
The defendant filed eight special defenses to the plaintiffs' claims. Of these, the first, third, fifth, sixth and seventh special defenses were stricken by the court (Schimelman, J.). In the remaining special defenses the defendant claims the plaintiffs are barred from recovery by laches, estoppel, waiver, and their own negligence.
The defendant has filed a counterclaim seeking rescission of the conveyances memorialized in the deeds put in issue by the plaintiffs and a refund of the purchase price on the ground that the plaintiffs induced the conveyances by a misrepresentation of fact.
The court finds the facts to be as follows. In the early 1960's Roy Rude, who was employed as Technical Director at Armstrong Rubber Corporation, was the owner of approximately eleven parcels of undeveloped land in Hamden. In the multi-acre tract that he owned in the area of his present home on Tom Swamp Road, he built some houses, and in 1962 he sold a lot and house to John and Beverly Davie. He then created a subdivision of the portion of the rest of his holdings in the area that fronted on Tom Swamp Road, creating four lots to the east of the Davies' lot, each with 150 feet of frontage on Tom Swamp Road, the same frontage as the Davies' lot. To the north (rear) of the lots included in the subdivision was other land owned by Rude. In 1964, Rude sold a house and lot to the plaintiffs. This lot was two lots to the east of the Davies' property, and the vacant lot between the Davie property and the Benham property continued to be owned by Rude.
On a Sunday morning in April 1965, John Davie and Henry Benham heard chain saws on the lot between their properties and went out to investigate. They found Rude and two of his sons clearing the lot in preparation to build a house on it. Benham and Davie told Rude that they did not want a house to be built on the lot, which their children used for play, and they offered to buy the lot from him. He set a purchase price of $5,000 and they agreed to buy it at that price, with each of them paying $2,500 for half of the lot. Rude, Davie and Benham all testified about their recollection of the brief negotiations which preceded the oral agreement to buy and sell the lot. All agree that Benham and Davie mentioned their desire that the lot not be built upon. Though the witnesses' recollections differed as to the exact content of further remarks by Rude, the court finds that he expressed that if he divided and sold the halves of the middle lot, he wanted each of the purchasers to combine his half with his existing lot, not re-combine the halves for sale. CT Page 209
The parties did not reduce their agreement to a written contract but proceeded directly to an exchange of payment and deeds. The court finds that the buyers each gave Rude a check in the amount of $2,500 within a day or two of the Sunday morning discussion and that on April 20, 1965, Rude signed deeds granting half of the middle lot to the Benhams and half to the Davies, such that each half added seventy-five feet of frontage on Tom Swamp Road to the purchasers' existing lot. The deeds were prepared by an Attorney DeMatteis (who is now deceased), and the text of the deeds was based on Rude's statement of what his understanding was with Benham and Davie concerning the terms of the transfer. Rude had received payment before he caused the deeds to be prepared, and he did not consult further with the Davies or the Benhams but caused the deeds to be recorded in the land records of the Town of Hamden at approximately 9:30 a.m. on June 25, 1965 and mailed the deeds to the purchasers. The purchasers recall receiving the deeds by mail but do not recall the date they received them.
The quitclaim deeds by which Rude conveyed the half lots each contain the following statement after the description of the property conveyed:
 Said premises are subject to the following covenants and restrictions, to wit, viz: That neither the Releases, their heirs, administrators, or assigns, will from this day forward sub-divide the parcel created by the joining of the premises herein conveyed and the adjoining premises presently owned by the Releases herein; any matter of record.
Upon receiving the deeds, the plaintiffs made no objection to Rude concerning the restriction set forth above. At present, Rude lives next door to the property he conveyed to the Davies, that is, two lots to the west of the lot which he divided and sold to the Davies and the Benhams in 1965.
Sometime after 1965, Rude sold the land that abutted the middle lot to the rear.
In 1982 or 1983, wanting to sell or develop the middle lot, Messrs. Benham and Davie approached Rude and proposed the removal of the restriction from the deeds. Rude refused even after Benham offered to pay for the release of the restriction. At no time from his receipt of the deed for the half-lot until he filed this action did Benham tell Rude that the restrictive language in the deed was an error, or that it was invalid, or that it was not in accordance with the terms of the oral agreement they had reached in 1965. The first notice Rude received concerning such claims was his receipt of the complaint in this action sometime before CT Page 210 the return date of February 28, 1989, approximately six years after Benham had first indicated any desire that the deed restriction be removed.
In 1988, Benham purchased the Davies' property, consisting of their house lot and their half of what had been the middle lot. The Benhams seek to subdivide their property to recreate its original configuration, that is, three lots with 150 feet of frontage each, so that the middle lot can be sold as a house lot. They claim, inter alia, that the deed restriction set forth above prohibits only a subdivision of the parcel consisting of their original lot and the half lot, and that it has no application to a subdivision of the now existing larger parcel consisting of their original lot, the Davies' original lot, and the two halves of the middle lot.
The plaintiffs seek a declaratory judgment as to the following:
 "1. Whether or not the restrictions and covenants in the quitclaim deeds executed by the defendant purporting to prevent the `rejoining' of the In Between Piece [what the court has called the `middle lot'] into its original size and shape are valid and legal and whether or not the same precludes the use, utilization and engagement of the In Between Piece as a building lot.
 2. Whether or not the attempted `joining' of the First Piece with the Easterly half of the In Between Piece (as contemplated by the quitclaim deed [transferring the Davies' half lot] and/or the attempted joining of the Second Piece [the Benham's original lot] with the other portion of the Restricted Piece. . . .constitutes an illegal resubdivision of an existing subdivision."
The plaintiffs further seek reformation of the deeds for the two half-lots to reflect what the plaintiffs claim is the true intent of the parties.
Discussion
The plaintiffs claim that the restriction in the quitclaim deeds by which the defendant conveyed the half lots to them and to the Davies should be read to mean only that they agreed not to subdivide their lot-and-a-half parcel into two lots. Henry Benham that at the time of the oral agreement the defendant's CT Page 211 only concern was that he and Davie not sell off each half-lot as a house lot. The evidence indicated, however, that in 1965 the area at issue was zoned for house lots no smaller than an acre (a dimension met by each of the lots in the subdivision created by Rude), and it is therefore highly unlikely that Rude was talking in 1965 about the creation of half acre lots from the middle lot.
At trial, the defendant engaged in some testimony (notably, concerning written contracts for the sale of the house lots) which the court found to be confused and not credible, however the court finds that his version of the actual agreement of the parties is worthy of belief on the central points that the main concern of Benham and Davie was that they did not want a house to be built on the lot their children used as a play area, that he adopted this as a condition of sale, and that he conveyed this motivation to Attorney DeMatteis when he asked him to prepare deeds to effectuate the oral transaction. Davie testified that at the time of their Sunday morning negotiations Rude wanted to be assured that he and Benham weren't simply planning to sell the lot themselves after buying it for a total of $5,000, and the language used in the restriction drafted by the attorney is consonant with that concern during the negotiations. Attorney DeMatteis, a sole practitioner, died at some unknown time after preparing the deeds for the half-lots, and neither his testimony nor his office records were available at the time of trial.
At first, the defendant, who was seventy-three years old and physically frail at the time of trial, testified that at the Sunday morning meeting in the middle lot there had been no negotiations concerning "restrictions." The court takes that testimony to mean that the three neighbors, none of whom were lawyers, did not use the term "restrictions," but the court finds that they did discuss the intention that the lot not be used as a building lot, and that the defendant asked his lawyer to prepare a deed that would give effect to that agreement and to the buyers' assurance that they were not going to sell the lot as a building lot after buying it to prevent Rude from doing essentially the same thing.
The plaintiffs claim that the restrictive covenants ought to be narrowly construed and that the restriction at issue in evidence should be read to prohibit only subdivision of the one and one-half acre lot created by its transfer to the owner of the adjoining lot but not to prohibit subdivision of any other configuration, such as the combined tract composed of all three lots.
The Plaintiffs' Claims
Pursuant to 52-29 C.G.S. and 390 P.B., a declaratory judgment will be rendered only where a claimant CT Page 212
 a) has a legal or equitable interest by reason of danger or loss or uncertainty as to his rights or there is an actual bona fide and substantial dispute or substantial uncertainty of legal relations which requires settlement between the parties, and
 b) all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof, and
 c) the court is not of the opinion that the parties should be left to seek redress by some other form of procedure.
The court is satisfied that there is a real and substantial dispute between the plaintiffs and the defendant concerning 1) whether the deed restriction as written reflects the agreement entered into at the time of the transaction and 2) whether the deed restriction is valid and precludes the rejoining of the halves of the divided middle lot for use as a building lot.
It does not, however, appear that all persons having an interest in the subject matter of the complaint have either been notified or made parties. The plaintiffs did not apply for an order of notice, and only during the course of the trial did the fact come to light that at the time of the transfer of the half-lot to the Benhams and the Davies, Rude retained an abutting lot to the rear, and that he has since sold that lot.
Where the owner of two adjacent parcels conveys one with a restrictive covenant and retains the other, a subsequent purchaser of the retained parcel is entitled to enforce the restriction if it was made for the benefit of the retained land. Bauby v. Krasow, 107 Conn. 109, 139 A.2d 508 (1927); Grady v. Schmitz,16 Conn. App. 292, 296, 547 A.2d 563 (1988); Marion Road Association v. Harlow, 1 Conn. App. 329, 335, 472 A.2d 785 (1984).
The subsequent purchaser of Rude's land to the rear of the half-lots was not made a party nor is it claimed that he or she was given formal notice of the maintenance of this action. The plaintiffs argue that the restrictive covenant is personal and does not run with the land and that it was not executed by Rude for the benefit of his retained land. Accordingly, the plaintiffs claim that the subsequent grantee of Rude's adjoining retained land conveyed would have no right to enforce the restriction. The plaintiffs merely ask the court to determine the grantee's rights in the absence of the grantee, who may, upon notice, wish to assert a claim that the restrictive covenant is enforceable for the benefit of his or her property, especially since Rude testified that he thought preservation of the middle lot as open CT Page 213 space would enhance his remaining holdings.
This subsequent grantee is, in the judgment of the court, a "person having an interest in the subject matter of the complaint" within the meaning of 390(d) P.B., and the plaintiffs' failure to either make this grantee a party or provide formal, court-approved notice to him or her as to the maintenance of this action deprives the court of jurisdiction to render a declaratory judgment which would affect this absent grantee. See Tucker v. Baker, 192 Conn. 460,468-471, 472 A.2d 1261 (1984); Pinnix v. LaMorte, 182 Conn. 342,343, 438 A.2d 102 (1980); Young v. Chase, 18 Conn. App. 85,95, 557 A.2d 134 (1989).
Accordingly, the plaintiffs' claims for declaratory judgment, stated in the first and second counts of their complaint, are dismissed. As to the remaining count of their complaint, which sounds in fraudulent misrepresentation, the court finds, as stated in the discussion that follows concerning the counterclaim, that the deed restriction reflected the parties' actual agreement and was not the product of fraudulent misrepresentation.
The Counterclaim
The dismissal of the plaintiffs' action for declaratory judgment does not affect the court's jurisdiction as to the counterclaim of Rude for rescission of the conveyance of the half-lots on the ground that the conveyance was induced by a material misrepresentation by plaintiff Henry Benham. Pinnix v. LaMorte,182 Conn. 342, 343, 438 A.2d 102 (1980).
In that counterclaim, Rude claims that because the plaintiffs have asserted in their complaint that the restrictive covenant was not part of that agreement and was the result of their own mistake or mutual mistake, he is entitled to rescission of the contract and reconveyance to him of the middle lot upon his refund of the purchase price.
While rescission is a remedy available either for repudiation or breach of a contract, 12 Williston Contracts, 3d edition, 1466, page 179, the plaintiffs have neither repudiated nor breached the restrictive covenant set forth in the deeds to the half-lots, but have sought a declaration of the validity and scope of that restriction.
The court cannot grant relief based on speculation that the plaintiffs will repudiate the restrictive covenant if it is construed to prevent re-joinder of the two half-lots. The defendant relies for the most part on case law holding that rescission is an available equitable remedy where a grantor has in fact breached a representation made as an inducement to the CT Page 214 conveyance. For example, in Kavarco v. T. J. E., Inc., 2 Conn. App. 294,300, 478 A.2d 257 (1984), the grantor built multi-family dwellings in a subdivision after allegedly assuring the grantee that only single family dwellings would be built. In Metcalfe v. Talarski, 213 Conn. 145, 153, ___ A.2d ___ (1989), the purchaser who sought rescission of a real estate contract established that the vendor had defaulted in conveying the property. In Caramini v. Tegulias, 121 Conn. 548, 551 (1936), the rescission was awarded where the grantee breached a duty to provide for and support the grantor, which performance was the consideration for the transfer.
The defendant has not established any such repudiation or breach, and rescission is not available on that basis. He additionally claims, however, that he is entitled to rescission if the evidence establishes the absence of a meeting of the minds in the conveyance at issue. The evidence does not so establish. Rather, the court finds that at the time of the brief discussion about the transfer on a Sunday morning in the spring of 1965, Benham and Davie clearly stated that the reason that they did not want Rude to proceed with his plans to build a house was that they wanted to preserve the lot as open space to enhance their own properties. Rude was willing to sell for this purpose but he sought assurance that Benham and Davie would not subsequently take advantage of his sensitivity to the appeal of neighbors by later reconstituting the lot and selling it off, thus reaping the benefit he was foregoing for their sake. Davie acknowledged that Rude had expressed the concern that there not be a later re-subdivision, and though Davie professed to have understood that Rude meant that the newly created lot-and-a-half would not be divided in two, such an interpretation is strained and not credible given the fact that there were houses centered on the Benham and Davie lots at the time and that the existing zoning would have effectively precluded that kind of division, as has been found above.
While the Benhams and Davies did not see the restrictive covenant which Attorney DeMatteis drafted to effectuate what Rude had told him of the agreed terms until after they received the deeds, they made no objection whatever to the covenants until the filing of their suit. Up to that time, some twenty-four years after they received the deed, the plaintiffs had never indicated that the restrictive covenant did not accurately reflect the agreement Mr. Benham had reached with Rude. Their silence strongly demonstrates that the plaintiffs have not regarded the text of the restrictive covenant as a departure from the agreement reached with Rude.
Rude certainly does not claim that the restrictive covenant was the result of a mistake, since he testified to the effect that CT Page 215 he thought it reflected the agreement and that the purchasers would comply with it. He has not established that the covenant represented a mistake on the part of the plaintiffs, rather the evidence establishes that Rude stated the terms on which he would sell, including his intention that the lot not be reconstituted, that Benham and Davie indicated agreement, and that he caused a deed to be prepared which prohibits the subdivision which would be needed to reconstitute the middle lot. The court finds that no mistake occurred and that there is no occasion for rescission.
Conclusion
The plaintiffs' claims for a declaratory judgment are dismissed, and judgment shall enter in favor of the defendant as to count three of the complaint. The defendant shall recover his costs.
Judgment shall enter in favor of the plaintiffs as to the defendant's counterclaim.
BEVERLY J. HODGSON, JUDGE.