SHERWOOD E. CLOUGH ET AL. *v.* DONALD WILSON ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued January 9—decision released April 6, 1976

*Philip Bayer,* with whom were *Dominic J. Squa-trito* and, of the New York bar, *Kent Greenawalt,* and with whom, on the brief, was *Thomas P. Fitz-Gerald,* for the appellants (plaintiffs).

*Rolland Castleman,* for the appellees (defendants).

HOUSE, C. J.  This is an appeal from a judgment of the Superior Court in Tolland County which sustained the defendants' plea in abatement and dismissed the action.  The action had its roots in a schism among the members of a small religious organization in Manchester known as Plymouth Brethren.  The dispute is over control of the meeting house in which the united organization worshiped prior to the schism.  The six plaintiffs sought a declaratory judgment that they are "the persons entitled to the control, custody and ownership of The Manchester Meeting Hall, Incorporated, including said real estate and all of the assets owned by said corporation," and an injunction enjoining the nine defendants "from further using and occupying said property as a meeting place or having any further connection with same without permission from the Plaintiffs as the legal custodians of said property."  To the complaint the defendants pleaded in abatement that the court had no jurisdiction of

the action because in order to grant the plaintiffs the relief they requested the court would be required to determine and establish the true tenets of religious faith and practice of Plymouth Brethren and its founders and teachers and to determine whether the defendants have departed from those tenets. They asserted that the first amendment to the constitution of the United States forbids the court "to determine the matters called for in the complaint."

The court's finding of fact is not attacked. The organization, known as Plymouth Brethren, was founded in England in 1826 by J. N. Darby who was followed, in turn, by successive leaders, including James Taylor, Jr., who became leader in 1953. The Manchester "assembly," as the local organizations of the brethren are called, was formed in the late 1800s. In 1962, a nonstock corporation was formed under the name of The Manchester Meeting Hall, Incorporated. Among the original incorporators were the defendants Donald Wilson and Robert Beattie and the plaintiffs Sherwood Clough and George Forbes, Jr. The stated purpose of the corporation was "to provide a suitable building for worship, prayer, reading of the Holy Scriptures, and preaching the Word of God according to injunction contained in the Holy Scriptures. These purposes and activities are to be carried out without monetary profit to anyone." The certificate of incorporation provided that "any person accepted by the Board of Trustees shall become a member of the corporation," that the affairs of the corporation shall be governed by a board of trustees which board shall be composed of the officers of the corporation which officers "shall be elected by majority vote at the annual meeting," that the trustees may

take, hold and convey real estate and exercise any authority which may be necessary in order to carry out and administer the purposes for which the corporation was formed. It also provided that if in the opinion of a majority of the board of trustees it is in the best interests of the corporation to dissolve, the dissolution shall be carried out "in accordance with the laws governing the procedures for dissolution" and that any excess of assets remaining in the hands of the corporation after the payment of debts "shall be distributed only for religious purposes for the benefit of Christians designated by the U.S. Government as 'Plymouth Brethren No. 4.' " No bylaws were adopted for the corporation and this certificate of incorporation is the only document governing the corporation. Land was acquired and a meeting house erected. Since 1969, a national and worldwide schism has developed over the acceptance of the ministry of James Taylor, Jr., and, upon his death in 1970, that of his alleged successor, James Symington. There presently exist approximately six factions or groups. Defendants Homer Bidwell, Donald Wilson and Robert Beattie rejected the ministry of James Taylor, Jr., because, they believed, his teachings and tenets departed from those of the founder, Darby, and his immediate successor, James Taylor, Sr. Because of the schism, the plaintiffs Clough and Forbes resigned as trustees of The Manchester Meeting Hall, Incorporated, and will not worship with the defendants. Of the approximate thirty-seven members at the time of the schism, approximately twenty members remained a part of the plaintiffs' group while seventeen members compose the defendants' group. The defendants were excommunicated or "withdrawn from" by the plaintiffs and are no longer looked

upon by the plaintiffs as brethren. The plaintiffs have refused to worship with the defendants because of their rejection of the ministry of James Taylor, Jr., and their resultant excommunication, and not because of. any physical bar to their entry upon the church premises.

The court concluded that "[t]he issues raised by the complaint cannot be decided without extensive inquiry into and resolution of religious doctrine, faith, practice, custom, conduct or discipline," that there exists no appropriate church governing body whose ruling can be enforced without the resolution of doctrinal questions and without extensive inquiry into religious policy, that there exist no deeds or other documents to which general principles of property law may be applied for a resolution of the issues between the parties, and that there are no neutral principles of law which the court could apply to resolve the dispute between the parties and grant the plaintiffs their requested relief and that there is no church tribunal to which the plaintiffs can turn for relief. It, accordingly, sustained the plea in abatement and dismissed the action.

Although we find no error in the action of the trial court in dismissing the plaintiffs' complaint, we have grave doubts that it correctly concluded that it lacked jurisdiction for the reasons it stated for its ruling. The fact that the source of the controversy lies in disagreement as to religious doctrinal beliefs and practices is not determinative of whether a civil court has jurisdiction to decide church property disputes, many of which arise over doctrinal controversy. "To so hold would too narrowly restrict the scope of the court's jurisdiction. The relevant inquiry must be whether the court can resolve the property dispute on the basis of

neutral principles of law." *Polen* v. *Cox*, 259 Md. 25, 30, 267 A.2d 201. Although "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes . . . there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches." *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Presbyterian Church*, 393 U.S. 440, 449, 89 S. Ct. 601, 21 L. Ed. 2d 658. As the court also observed in that case (p. 445), "the State has a legitimate interest in resolving property disputes, and . . . a civil court is a proper forum for that resolution." Particularly is this so in an instance such as the present case where it is apparent that there is no church tribunal to which the parties can turn for a decision. On the present record, we cannot be certain that the application of "neutral principles of law" would not resolve the property dispute, particularly in view of the fact that the property in dispute is owned by a nonstock corporation, that the articles of incorporation provide for a board of trustees to govern the affairs of the corporation and for the election of these trustees by a majority of the members of the corporation. Although it appears that the corporation has never adopted bylaws, it is, nevertheless, a de facto corporation; *McAuliffe* v. *Russian Greek Catholic Church*, 130 Conn. 521, 537, 36 A.2d 53, cert. denied, 323 U.S. 726, 65 S. Ct. 60, 89 L. Ed. 583; see *Greene* v. *Dennis*, 6 Conn. 293, 302–304. As a nonstock corporation, it is subject to the statutes controlling such entities. It may well be that, despite the fact that the dispute has its roots in religious controversy, sufficient neutral principles of law nevertheless exist to enable a civil court to exercise jurisdiction. *Maryland &*

*Virginia Eldership* v. *Church of God at Sharpsburg, Inc.,* 254 Md. 162, 254 A.2d 162, appeal dismissed, 396 U.S. 367, 90 S. Ct. 499, 24 L. Ed. 2d 582; *Bangor Spiritualist Church, Inc.* v. *Littlefield,* 330 A.2d 793 (Me.); *Polen* v. *Cox,* supra; cf. *St. Michael & Archangel Russian Orthodox Greek Catholic Church* v. *Uhniat,* 451 Pa. 176, 301 A.2d 655. In any event, this deplorable controversy, involving as it does grave dissension among the members of a religious congregation, should not be permitted to go unresolved unless it is clearly apparent that it is beyond the powers of a civil court to adjudicate it. "The rule is well-recognized that the title to church property of a divided congregation is in that part of it which is acting in harmony with its own law, and the ecclesiastical laws, usages, customs and principles which were accepted among it before the dispute began. *Russian Orthodox Greek Catholic All Saints Church* v. *Kedrovsky,* 113 Conn. 696, 704, 156 Atl. 688." *McAuliffe* v. *Russian Greek Catholic Church,* supra, 527. Title to the property in dispute is held by a nonstock corporation organized under the provisions of title 33, chapter 600 of the General Statutes—as distinguished from a religious corporation organized under the provisions of title 33, chapter 598. The statutes governing nonstock corporations and the corporate provisions for government of the affairs of the corporation and the management and control of its corporate assets as set out in its articles of incorporation would seem to provide sufficient neutral principles of law to enable a civil court to exercise jurisdiction. We are, nevertheless, on the record before us, unable to determine whether the court properly sustained the plea in abatement for the reasons it stated.

It does not follow, however, that the judgment of the court in dismissing the appeal was erroneous. As we have noted, this was an action for a declaratory judgment with a prayer for injunctive relief incidental and ancillary to that judgment. The question of the right to maintain an action for a declaratory judgment is jurisdictional and must be considered on appeal. *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 527, 290 A.2d 327. Practice Book § 309 prescribes the conditions under which an action for a declaratory judgment will lie. It expressly provides that "[t]he court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." The record does not disclose that there has been a compliance with the requirements of this condition. The most obvious deficiency is that neither the corporate holder of record title to the property in dispute—The Manchester Meeting Hall, Incorporated—nor the trustees of the corporation in their official capacities as such are parties. Nor is there anything in the record to indicate that notice of the action was given to them or to the members of the corporation who are not among the six plaintiffs and nine defendants. As this court has often noted, when the persons having a direct interest in the subject matter of a declaratory judgment action are reasonably within the reach of process and are not so numerous that it would impose an unreasonable burden upon the plaintiff they should be made parties or have, under court order, reasonable notice of the action. *State ex rel. Kelman* v. *Schaffer,* supra, 528; *Wawrzynowicz* v. *Wawrzynowicz,* 164 Conn. 200, 203, 319 A.2d 407; *Benz* v. *Walker,* 154

Conn. 74, 78, 221 A.2d 841; *Wenzel* v. *Danbury,* 152 Conn. 675, 677, 211 A.2d 683; *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 484, 196 A. 344.

We conclude that in the absence of compliance with the requirements of § 309 of the Practice Book the plaintiffs were not entitled to a declaratory judgment, the court being, for this reason, without jurisdiction. Since the prayer for injunctive relief was incidental and ancillary to the claim for that judgment, it too must fall. *Copp* v. *Barnum,* 160 Conn. 557, 559, 276 A.2d 893; *Benz* v. *Walker,* supra, 80. The trial court being without jurisdiction, there was no error in its judgment dismissing the action.

There is no error.

In this opinion the other judges concurred.