******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FOUNDATION FOR THE ADVANCEMENT OF CATHOLIC SCHOOLS, INC., ET AL. *v.* THE MOST REVEREND LEONARD P. BLAIR ET AL.
## (AC 46603)

Seeley, Westbrook and Prescott, Js.

*Syllabus*

The plaintiffs, a corporation and five members of its board of trustees, appealed from the trial court's judgment dismissing, for lack of subject matter jurisdiction, their declaratory judgment action that sought, inter alia, an interpretation of the corporation's bylaws governing the appointment of trustees to its board. The plaintiffs, who had commenced the action after certain appointments to the board were made by the named defendant, the former archbishop of the diocese of Hartford, claimed that the court erred in determining that exercising jurisdiction over the action would have violated the free exercise and establishment clauses of the first amendment to the United States constitution because adjudicating the dispute would have resulted in the excessive entanglement of government and religion. *Held*:

The trial court improperly granted the defendants' motion to dismiss for lack of subject matter jurisdiction on the basis of its determination that the plaintiffs' action asked the court to entangle itself in matters of religious doctrine and practice and church polity, as there was no first amendment barrier prohibiting the court from applying neutral principles of state law governing corporations to the secular language of the corporation's bylaws for the purpose of declaring the process to be followed in appointing board members and determining the validity of certain appointments to the board.

This court declined to adjudicate the defendants' alternative grounds for affirming the judgment, specifically, that the plaintiffs' lacked standing to bring the action, because doing so would have required a resolution of disputed jurisdictional facts, which require an evidentiary hearing, and, thus, the case was remanded to the trial court for consideration of those standing claims and a hearing thereon.

Argued October 7, 2024—officially released February 25, 2025

*Procedural History*

Action for a declaratory judgment, inter alia, determining whether the appointment of certain trustees to the

named plaintiff's board of trustees by the named defendant was in compliance with its bylaws and other governing documents, brought to the Superior Court in the judicial district of Hartford, where the trial court, *Noble, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Reversed*; *further proceedings*.

*James M. Moriarty*, with whom, on the brief, was *Eric Henzy*, for the appellants (plaintiffs).

*Hannah F. Kalichman*, with whom, on the brief, was *Richard P. Colbert*, for the appellees (defendants).

*Michael E. Roberts*, former human rights attorney, filed a brief for the Commission of Human Rights & Opportunities as amicus curiae.

*Opinion*

SEELEY, J. The plaintiffs, Foundation for the Advancement of Catholic Schools, Inc. (FACS), and five members of its Board of Trustees (board),[1] appeal from the judgment of the trial court dismissing, for lack of subject matter jurisdiction, their complaint against the defendants, the Most Reverend Leonard P. Blair; Reverend Ryan M. Lerner; Reverend Michael Whyte; Reverend Jeffrey Romans; Reverend Daniel G. Keefe; and Matthew A. Byrne. On appeal, the plaintiffs claim that the court improperly dismissed their complaint for lack of subject matter jurisdiction after concluding that exercising jurisdiction over the action would violate the free exercise and establishment clauses of the first amendment to the United States constitution because adjudicating the dispute would result in the excessive entanglement of government and religion. We conclude that the trial court improperly determined that the first

---

[1] The five members are Brian A. Giantonio, Charles E. Hunt, Patricia A. Teufel, Nancy M. Palmisano, and Anita L. Schepker.

amendment bars adjudication of the plaintiffs' claims and, accordingly, reverse the judgment of the court.

The following undisputed factual and procedural history, as set forth by the court, *Noble, J.*, in its memorandum of decision dated June 15, 2023, dismissing the plaintiffs' complaint, is relevant to our resolution of this appeal. "This action arises from a dispute over [FACS'] bylaws, specifically, those governing the . . . authority to appoint members [to its board]. FACS is a Connecticut nonstock corporation incorporated in 1983 to promote Catholic education within the Archdiocese of Hartford (AOH) by raising funds and providing scholarships to students who want to attend an AOH school. . . . Pursuant to FACS' bylaws, the [board] consists of twenty-one members: fifteen lay members and six ex officio members compris[ed] of the sitting Archbishop of Hartford and certain other religious and lay representatives of the AOH. . . .

"Prior to 2005, the appointment of [the] members [of the board] was the sole prerogative of the archbishop. . . . In 2005, [FACS'] bylaws were amended to add a Governance Committee [(committee)] [that was] tasked with nominating a slate of candidates for open and vacant trustee positions. This slate of candidates would then be given to the archbishop to make appointments to the board. The current dispute arose in August, 2019, over whether the archbishop may appoint board members other than those nominated by the . . . committee. The plaintiffs claim that the archbishop may only appoint trustees exclusively from the names nominated by the . . . committee. The defendants claim that the bylaws do not bind the archbishop to accept the nominations and, instead, the archbishop may reject the nominations put forth by the . . . committee and appoint trustees to the board not nominated by the . . . committee.

"The present action was commenced after certain appointments were made to the board by [then] Archbishop Leonard Blair[2] on July 8, 2020, and February 22, 2021. Between July 8, 2020, and February 22, 2021, Archbishop Blair appointed five new individuals to the board. . . . Archbishop Blair further communicated, [in letters dated July 10, 2020] to two board members whose terms had expired that the new board members appointed on July 8, 2020, had replaced them. . . . The plaintiffs have refused to accept these appointments, as the appointments were not made from the list of names provided by the . . . committee. [This] action was commenced [by service of process on October 6, 2021]. [The plaintiffs] fil[ed] . . . a complaint, writ, and summons on October 7, 2021.[3]

"In their motion to dismiss, the defendants argue[d] that the plaintiffs lack[ed] standing for four reasons . . . . On August 26, 2022, the court, sua sponte, raised the issue of subject matter jurisdiction based upon the first amendment right to religious freedom. The court requested additional briefing on (1) whether it was deprived of subject matter jurisdiction by operation of the first amendment to the United States constitution and article first, § 3, of the constitution of Connecticut, (2) whether an evidentiary [hearing] needed to be held, and (3) whether § 7 of the 2005 bylaws mandates the

---

[2] It appears that, while this appeal was pending, Archbishop Blair was succeeded in office by Archbishop Christopher J. Coyne. Neither the plaintiffs nor any of the defendants have sought to substitute Coyne for Blair as a defendant. See Practice Book § 62-5 ("[a]ny change in the parties to an action pending an appeal shall be made in the court in which the appeal is pending"). In light of our conclusion that the trial court improperly rendered a judgment of dismissal and that this case should be remanded for further proceedings, the plaintiffs are ordered to seek substitution in the trial court upon remand.

[3] "The action seeks a declaratory judgment regarding the interpretation of the bylaws governing appointments to the board (count one) and a judicial determination invalidating the board appointments made by Archbishop Blair in July, 2021, and February, 2022 (count two)."

archbishop to make appointments to the board . . . once nominations have been submitted to him. A hearing was held on November 29, 2022." (Citations omitted; footnote added; footnote in original; footnotes omitted.)

After both parties submitted supplemental briefing on the issue of subject matter jurisdiction, the court issued a memorandum of decision in which it concluded that, "[n]otwithstanding its formal status as a nonstock corporation . . . FACS is a religious organization with ecclesiastical doctrine and practices" and that "the court [could not] neutrally apply principles of corporate bylaw interpretation [in this case] without intruding upon the archbishop's religious decision-making authority." The latter conclusion was based on the court's determination that "the plaintiffs are seeking [a] declaratory judgment concerning the process by which trustees are appointed to FACS's board pursuant to its bylaws" and "[i]t is undisputed that the archbishop speaks for the AOH as an ecclesiastical authority and ultimately it is 'the archbishop who shall make appointments to the board.' " The court further concluded that adjudicating the plaintiffs' claims would entangle it in "matters of religious doctrine, religious practices and church polity," namely, "the religious context in which the archbishop appoints members to the board of a religious organization . . . ." Notably, the court reached this conclusion without referring to any specific doctrine, practice, or polity concerns that would be implicated by an adjudication of the plaintiffs' claims. Thus, the court dismissed the plaintiffs' complaint on the ground that it lacked subject matter jurisdiction pursuant to the first amendment to the federal constitution and article first, § 3, of the Connecticut constitution, and, in light of that ruling, declined to address the issue of standing raised in the defendants' motion to dismiss. After the court rendered its judgment of dismissal, the plaintiffs filed this appeal.

The plaintiffs claim that the court improperly dismissed their complaint for lack of subject matter jurisdiction because FACS is not a religious organization, and that "[e]ven if FACS is a religious organization, the . . . court could have, and should have, decided the parties' straightforward corporate governance dispute pursuant to the neutral principles of law doctrine." They reason that, "[t]he mere fact that the archbishop ultimately makes trustee appointments to the board is not enough to require abstention and to compel dismissal, as it would give the archbishop a preferred position in our society." (Internal quotation marks omitted.) The plaintiffs claim further that "there is nothing in the record to support the conclusion that applying neutral principles of law would entangle the court in matters of religious doctrine and practices and church polity," because the plaintiffs are asking the court only "to declare the process to be followed in appointing . . . trustees [to the board]." The plaintiffs assert that they have not "question[ed] the archbishop's *religious* decision-making authority," nor have they "raise[ed] matters of *religious* doctrine or practices, as opposed to matters of *civil corporate governance and practices*," as their requested relief pertains "solely to matters of [the] corporate governance process based on [FACS'] bylaws." (Emphasis in original.)

The defendants counter that the court correctly decided that FACS is a religious organization and that subject matter jurisdiction is lacking because neutral principles of law cannot be applied here. They argue that resolving these claims by relying only on neutral principles of law is impossible because "the archbishop exercised his religious discretion to appoint FACS board members" and "an examination of the religious reasoning of an ecclesiastical authority is off-limits for a secular court, regardless of whether the underlying dispute could ordinarily be decided by . . . neutral

principles of contract or corporate law." They further argue that "the archbishop's decisions about who should have stewardship over school funding implicates Catholic doctrine, and his judgment as to who is best suited for a board seat at a religious organization like FACS cannot be reviewed by a secular court without calling into question his religious judgment as to how best to support the schools and their underlying doctrinal mission." As an alternative ground for affirming the court's decision, the defendants have set forth four reasons to support their claim that the plaintiffs lack standing.

Before we address the parties' claims on appeal, we first set forth the standard of review that applies to a court's dismissal of an action for lack of subject matter jurisdiction. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . *Hepburn* v. *Brill*, 348 Conn. 827, 838–39, 312 A.3d 1 (2024). [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is [primarily] a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without

jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Travelers Indemnity Co.*, 228 Conn. App. 803, 809–10, 326 A.3d 557 (2024); see also *Karen* v. *Loftus*, 228 Conn. App. 163, 175–76, 324 A.3d 793, cert. denied, 350 Conn. 924, 325 A.3d 1094 (2024).[4]

I

We first address the plaintiffs' claim that the court improperly dismissed their action for lack of subject matter jurisdiction on the basis of its determinations that (1) FACS is a religious organization and (2) the plaintiffs' claims are "inextricably intertwined with the religious context in which the archbishop appoints members to the board of [FACS], a religious organization," such that the court could not "neutrally apply principles of corporate [law] without intruding upon

---

[4] The amicus, the Commission on Human Rights and Opportunities, urges us to determine that "constitutional religion doctrines" do not impede a court's subject matter jurisdiction. We decline to do so because adopting that position would require us to overrule our own precedent in *Thibodeau* v. *American Baptist Churches of Connecticut*, 120 Conn. App. 666, 994 A.2d 212, cert. denied, 298 Conn. 901, 3 A.3d 74 (2010), a case in which this court affirmed the dismissal of an action for lack of subject matter jurisdiction on first amendment establishment clause grounds; id., 667–68; and in which our Supreme Court denied certification to appeal. See *Thibodeau* v. *American Baptist Churches of Connecticut*, 298 Conn. 901, 3 A.3d 74 (2010); accord *Abdelhak* v. *Jewish Press, Inc.*, 411 N.J. Super. 211, 235, 985 A.2d 197 (App. Div. 2009) (affirming dismissal for lack of subject matter jurisdiction on first amendment establishment clause grounds); *Hafif* v. *Rabbinical Council of Syrian & Near Eastern Jewish Communities in America*, 140 App. Div. 3d 1017, 1017, 34 N.Y.S.3d 160 (2016) (same). "It is axiomatic that we cannot overrule the decision made by another panel of this court in the absence of en banc consideration"; *State* v. *Freddy T.*, 200 Conn. App. 577, 589 n.14, 241 A.3d 173 (2020); and "that this court cannot overrule or reconsider the decisions of our Supreme Court." *State* v. *Corver*, 182 Conn. App. 622, 638 n.9, 190 A.3d 941, cert. denied, 330 Conn. 916, 193 A.3d 1211 (2018).

the archbishop's religious decision-making authority." We need not decide whether FACS is a religious organization because, even if we assume, without deciding, that it qualifies as such, we conclude that the claims raised in the plaintiffs' action can be resolved by applying neutral principles of law.

The following legal principles concerning the religion clauses of the first amendment to the United States constitution are relevant to our resolution of this claim.[5] "The first amendment to the United States constitution protects religious institutions from governmental interference with their free exercise of religion. . . . The first amendment [also] prohibits the excessive entanglement of government and religion. . . . [T]he first amendment has been interpreted broadly to severely [circumscribe] the role that civil courts may play in resolving . . . disputes concerning issues of religious doctrine and practice. . . . Under both the free exercise clause and the establishment clause, the first amendment prohibits civil courts from resolving disputed issues of religious doctrine and practice. . . . Under [the] excessive entanglement analysis . . . claims requiring courts to review and to interpret religious doctrine and practices are barred by the first amendment." (Citations omitted; internal quotation

[5] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

Although the court also cited to our state constitution in its memorandum of decision, it did not engage in any independent state constitutional analysis, nor have the defendants done so at any stage of the proceedings. Furthermore, our appellate courts have not yet had occasion to determine the extent to which the religion clauses of the state constitution prohibit a civil court from exercising jurisdiction. Therefore, we assume without deciding that the protections provided in the religion clauses of our state constitution are equivalent to those provided by the first amendment and limit our review to whether the plaintiffs' claims are prohibited by the federal constitution. See *Thibodeau* v. *American Baptist Churches of Connecticut*, 120 Conn. App. 666, 668 n.3, 994 A.2d 212, cert. denied, 298 Conn. 901, 3 A.3d 74 (2010).

marks omitted.) *Tilsen* v. *Benson*, 347 Conn. 758, 770–71, 299 A.3d 1096 (2023). "The establishment clause's preclusion against inquiring into religious matters has been described broadly as the 'ecclesiastical abstention doctrine . . . .' " Id., 772–73.

"Freedom of religion is guaranteed not only to individuals but also to churches, and church organizations, which have power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. . . . At least since [*Watson* v. *Jones*, 80 U.S. (13 Wall.) 679, 727, 20 L. Ed. 666 (1871)], the Supreme Court consistently has held that civil courts are prohibited by the first amendment from adjudicating disputes turning on church policy and administration or on religious doctrine and practice. . . . In short, [as a] general rule . . . religious controversies are not the proper subject of civil court inquiry, and . . . a civil court must accept the ecclesiastical decisions of church tribunals as it finds them." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Thibodeau* v. *American Baptist Churches of Connecticut*, 120 Conn. App. 666, 671–73, 994 A.2d 212, cert. denied, 298 Conn. 901, 3 A.3d 74 (2010).

"The constitution, however, does not immunize every church action from [judicial] review. . . . [C]hurches, their congregations and hierarchy exist and function within the civil community . . . [and] it is acknowledged that they are as amenable as other societal entities to rules governing property rights, torts and criminal conduct. . . . [Therefore] [i]f a court can resolve the dispute by applying only neutral principles of law . . . judicial review may be permissible."[6] (Citations

---

[6] "The 'neutral principles of law' approach was first mentioned approvingly by the United States Supreme Court in *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969). In that case, the Supreme Court noted that 'there are neutral principles of law, developed for use in

omitted; internal quotation marks omitted.) Id., 673; see also *Episcopal Church in the Diocese of Connecticut* v. *Gauss*, 302 Conn. 408, 424–25, 28 A.3d 302 (2011) (recognizing that church property disputes can "be resolved" without considering "doctrinal matters" based on "neutral principles of law by examining the deeds to church property, local church charters, state statutes governing the holding of church property and the constitution and canons of the general church for language concerning the ownership and control of church property," in accordance with "objective, well-established concepts of trust and property law" (internal quotation marks omitted)), cert. denied, 567 U.S. 924, 132 S. Ct. 2773, 183 L. Ed. 2d 653 (2012).

"Under the neutral principles approach, a court resolving a dispute arising in a religious context may be required to examine certain religious documents, such as a church constitution, but must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts or to resolve a religious controversy . . . . [Our Supreme] [C]ourt has concluded that the neutral principles of law approach is preferable [to the hierarchical approach of *Watson* v. *Jones*, supra, 80 U.S. 725–27],[7] because it provides the parties with a more level playing field, and the outcome in any given case is not preordained in

all property disputes, which can be applied without "establishing" churches to which property is awarded.' [Id., 449.] A year later, the Supreme Court upheld a Maryland court's application of the 'neutral principles of law' approach to a church-property dispute. [See] *Maryland & Virginia Eldership of Churches of God* v. *Church of God at Sharpsburg Inc.*, 396 U.S. 367, 90 S. Ct. 499, 24 L. Ed. 2d 582 (1970)." (Citation omitted.) *Ex parte Alabama-West Florida Conference of United Methodist Church, Inc.*, Docket No. SC-2023-0385, 2024 WL 1592375, *7 n.5 (Ala. April 12, 2024).

[7] "[T]he hierarchical deference approach . . . provides that when a church property dispute has been resolved by the highest judicatory tribunal of a hierarchical church, civil courts must accept such a decision as final and binding." (Citation omitted.) *Heartland Presbytery* v. *Presbyterian Church of Stanley, Inc.*, 53 Kan. App. 2d 622, 633, 390 P.3d 581 (2017).

favor of the general church, as happens in practice under the hierarchical approach. Moreover, as the [United States Supreme] [C]ourt explained in [*Jones* v. *Wolf*, 443 U.S. 595, 603, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979)], the neutral principles approach is completely secular and relies exclusively on objective, well established concepts of trust and property law familiar to lawyers and judges." (Citation omitted; footnote added; internal quotation marks omitted.) *Tilsen* v. *Benson*, supra, 347 Conn. 773–74.

Although the neutral principles of law approach initially was applied by Connecticut courts to church property disputes, our Supreme Court recently has clarified that "the neutral principles of law doctrine *permits civil courts to decide disputes arising in religious contexts, so long as they may be resolved solely by a secular legal analysis* that does not implicate or [is] not informed by religious doctrine or practice."[8] (Emphasis added; internal quotation marks omitted.) Id., 774; see also *Serbian Eastern Orthodox Diocese for the United States & Canada* v. *Milivojevich*, 426 U.S. 696, 710, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976) (recognizing first amendment principle commanding "courts to decide church property disputes without resolving underlying controversies over religious doctrine" (internal quotation marks omitted)); *Burri Law PA* v. *Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022) ("[t]he ecclesiastical abstention doctrine provides that a civil court may not adjudicate the correctness of an interpretation of canonical text or some decision relating to government of the religious polity" (internal quotation marks omitted)); *McRaney* v. *North American Mission Board of the*

---

[8] Our Supreme Court also noted the lack of any authority "indicating that the recent sea changes to the United States Supreme Court's establishment clause jurisprudence [as set forth in *Kennedy* v. *Bremerton School District*, 597 U.S. 507, 142 S. Ct. 2407, 213 L. Ed. 2d 755 (2022)] affect the continuing vitality of the neutral principles of law doctrine, and [our courts] continue to follow it  . . . ." *Tilsen* v. *Benson*, supra, 347 Conn. 775 n.8.

*Southern Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) ("[t]he ecclesiastical abstention doctrine recognizes that the [e]stablishment [c]lause of the [f]irst [a]mendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions"), cert. denied,      U.S.     , 141 S. Ct. 2852, 210 L. Ed. 2d 961 (2021); but see *Thibodeau* v. *American Baptist Churches of Connecticut*, supra, 120 Conn. App. 674–75 (cautioning that "the exception in cases where neutral principles of law may apply ought not swallow the first amendment rule"). Thus, pursuant to *Tilsen* and *Thibodeau*, disputes that arise in a religious context properly may be adjudicated by a court applying secular principles of law, so long as doing so does not require resolution of a strictly and purely ecclesiastical question of religious doctrine or practice or of church government.[9]

Because the issue in the present case concerns a *corporate* governance dispute between church leaders

---

[9] "[M]atters of church government . . . constitute purely ecclesiastical questions." (Internal quotation marks omitted.) *McRaney* v. *North American Mission Board of the Southern Baptist Convention, Inc.*, supra, 966 F.3d 348. The term "church government" references the organizational structure that a church has adopted for the internal governance of its members. See, e.g., *Smith* v. *Church of God at Locust Valley*, 326 F. Supp. 6, 9 n.6 (D. Md. 1971) ("[w]ith regard to the generally recognized types of church polity, or forms of church government . . . [a]t least three kinds of internal structure, or polity, may be discerned; congregational, presbyterial, and episcopal" (citations omitted; internal quotation marks omitted)); *Elston* v. *Wilborn*, 208 Ark. 377, 378, 186 S.W.2d 662 (1945) ("[s]o far as we know, churches in the United States may be classified, as regards the form of church government, into four groups: papal, episcopal, presbyterial, and congregational"); *Thomas* v. *Lewis*, 6 S.W.2d 255, 257 (Ky. 1928) ("It may be that all classes of Christian churches may be brought under . . . three forms of church government. One is the prelatical form in which the governing power resides in prelates or diocesan bishops and the higher clergy. . . . Another is the Presbyterian form in which the governing power resides in assemblies, synods, presbyteries, and sessions. . . . Another is the independent or congregational form in which the body is self-governing, each single and local church administering its own government by the voice of the majority of its members.").

and an allegedly religious organization, the question before this court is whether the underlying dispute "may be resolved solely by a secular legal analysis that does not implicate or [is] not informed by religious doctrine or practice." (Internal quotation marks omitted.) *Tilsen* v. *Benson*, supra, 347 Conn. 774. We therefore must review the plaintiffs' requested relief and the relevant language of FACS' bylaws to determine whether resolving this dispute requires an inquiry into purely ecclesiastical questions of religious doctrine or practice or the governance, administration or policies of a church.[10]

In the request for relief set forth in their complaint, the plaintiffs ask the court for a judgment pursuant to General Statutes § 52-29[11] declaring that (1) "while the archbishop has the authority to appoint trustees to the board, he may only do so from a slate of candidates presented to him by the . . . committee"; (2) the board members appointed by the archbishop on July 8, 2020, and February 22, 2021, "were not appointed in compliance with the bylaws and are not validly members of the board"; and (3) the board members who were notified of their replacement by the archbishop in letters dated July 10, 2020, "have the right to hold office as trustees

---

[10] The defendants argue that FACS' bylaws and certificate of incorporation are ecclesiastical documents. Regardless of whether these documents are considered ecclesiastical documents, precedent from both the United States Supreme Court and our Supreme Court establishes that a court may rely on religious documents under the neutral principles of law approach, as long as its analysis remains secular. See *Jones* v. *Wolf*, supra, 443 U.S. 604 ("The neutral-principles method . . . requires a civil court to examine certain religious documents, such as a church constitution . . . . In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts"); accord *Episcopal Church in the Diocese of Connecticut* v. *Gauss*, supra, 302 Conn. 429 (under "neutral principles of law approach . . . courts are allowed to rely on secular, as well as religious documents, including idiosyncratic state statutes and common-law principles" (citation omitted)).

[11] General Statutes § 52-29 (a) permits the Superior Court to "declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. . . ."

of the board and are entitled to the office of trustee of the board, until their respective successors, if any, are lawfully and validly appointed." Although the plaintiffs present a sanitized version of this request in their appellate brief, characterizing it as simply a request "to declare the process to be followed in appointing . . . trustees [to the board]"; (internal quotation marks omitted); their request clearly asks the trial court not only to interpret the bylaws to declare the relevant process for appointments to the board, but also to go a step further and to invalidate the appointments made by the archbishop as being of no force or effect pursuant to the bylaws.

The record establishes that FACS is a nonstock corporation that is subject to the statutory provisions that apply to all such entities.[12] See General Statutes § 33-1000 et seq. Nonstock corporations are governed by their bylaws, which consist of "the code or codes of rules adopted for the regulation or management of the affairs of the corporation"; General Statutes § 33-1002 (4); and are controlled by a board of directors, the members of which are authorized to exercise corporate power and to manage the activities, property and affairs of the corporation. See General Statutes § 33-1080. The makeup and procedures for electing a corporation's board of directors are set forth in its bylaws or certificate of incorporation. See General Statutes §§ 33-1081 and 33-1082. Consequently, because adjudicating the plaintiffs' claims would require a court to determine what the procedure is for making appointments to the board under FACS' bylaws, we must examine the corporation's bylaws to determine whether it is possible to

---

[12] Significantly, FACS is not part of or within the hierarchy of the AOH. In contrast, FACS is an independently established nonstock corporation, which has permitted the archbishop to be on its board and has granted to him certain corporate authority relating to the appointment of members to the board.

resolve the plaintiffs' claims by conducting an exclusively secular legal analysis. As stated previously in this opinion, if such a determination entails judicial resolution of a question of religious doctrine or practice, or of the governance, administration or policies of a church, it is prohibited. See *Tilsen* v. *Benson*, supra, 347 Conn. 774; *Thibodeau* v. *American Baptist Churches of Connecticut*, supra, 120 Conn. App. 672. If, however, the dispute can be resolved solely by relying on secular legal principles, no such prohibition applies, and the court must assume jurisdiction over the dispute. See *Tilsen* v. *Benson*, supra, 774.[13]

To start, article II, § 1, of FACS' bylaws establishes the corporation's "Board of Trustees," which is equivalent to the corporation's board of directors, as it is empowered to "exercise . . . all powers of the corporation." See General Statutes § 33-1002 (2) ("'[b]oard' or 'board of directors' means the group of persons vested with management of the affairs of the corporation irrespective of the name by which such group is designated"). Article II, § 4, of FACS' bylaws, titled "Vacancies," provides that vacancies on the board "shall be filled by appointment by the Archbishop." Article V, § 7,[14] of FACS' bylaws provides for the creation and

---

[13] In fact, several decades ago, in a declaratory judgment action concerning church property owned by a nonstock corporation, our Supreme Court recognized that "[t]he statutes governing nonstock corporations and the corporate provisions for government of the affairs of the corporation and the management and control of its corporate assets as set out in its articles of incorporation . . . seem to provide sufficient neutral principles of law to enable a civil court to exercise jurisdiction." *Clough* v. *Wilson*, 170 Conn. 548, 554, 368 A.2d 231 (1976). In *Clough*, our Supreme Court emphasized that disputes arising in religious contexts "should not be permitted to go unresolved *unless it is clearly apparent that it is beyond the powers of a civil court to adjudicate it*"; (emphasis added) id.; but affirmed the lower court's dismissal of the action because the plaintiffs failed to comply with the requirements of the rules of practice for requesting a declaratory judgment. See id., 555.

[14] Article V, § 7, of FACS' bylaws, titled "Governance Committee," provides: "The Governance Committee shall consist of persons appointed by the President in a number determined by the Trustees to be sufficient to

empowerment of a "Governance Committee," which is responsible for nominating "a slate of qualified candidates" for vacant or soon to be vacant board positions, "for submission to the Archbishop who shall make appointments to the board . . . ." See General Statutes § 33-1101 (providing that "a board of directors may create . . . committees" that exercise "the powers of the board of directors" but "may not . . . fill vacancies on the board of directors"). Although the parties do not dispute that article V, § 7, of FACS' bylaws is the controlling provision with respect to board appointments, the defendants argue that the court cannot interpret this provision without impermissibly inquiring into the archbishop's exercise of "his religious discretion to appoint FACS board members."

"Courts construe bylaws according to the general rules of contract construction or statutory construction." (Footnote omitted.) 8 W. Fletcher, Fletcher Cyclopedia of the Law of Corporations (2024) § 4195; see *In re Color Tile, Inc.*, 475 F.3d 508, 515 (3d Cir. 2007) ("[i]t is well established that [t]he rules of contract interpretation are generally applicable to the interpretation of bylaws" (internal quotation marks omitted)), quoting *IBJ Schroder Bank & Trust Co.* v. *Resolution Trust Corp.*, 26 F.3d 370, 374 (2d Cir. 1994), cert. denied, 514 U.S. 1014, 115 S. Ct. 1355, 131 L. Ed. 2d 213 (1995). Generally, the rules governing the interpretation of contracts and statutes require courts to defer to the plain

conduct committee business. The Governance Committee shall be specifically responsible for the nomination, at least seven (7) days prior to the Annual Meeting, of a slate of qualified candidates for the trustee positions whose terms are to expire or are vacant. In compiling its slate of candidates, the Governance Committee shall solicit nominations from the Board of Trustees and shall include in its slate any person who is nominated by a Trustee at a duly called Board of Trustees meeting and who receives support from a majority of Trustees present at such meeting. The Governance Committee shall submit such slate of candidates to the President of the Corporation for submission to the Archbishop who shall make appointments to the Board of Trustees."

and ordinary meaning of language, unless such language gives rise to ambiguity. See, e.g., *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 260, 14 A.3d 284 (2011) ("We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect according to its terms." (Internal quotation marks omitted.)); *State ex rel. Dunn* v. *Connelly*, 228 Conn. App. 458, 486–87, 325 A.3d 1159 ("[p]ursuant to [the plain meaning rule codified in General Statutes] § 1-2z, [the court is] to go through the following initial steps [when interpreting a statute]: [f]irst, consider the language of the statute at issue . . . as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there" (internal quotation marks omitted)), cert. denied, 350 Conn. 933, 327 A.3d 386 (2024).

Read plainly, the relevant language in the bylaws concerning the procedure for appointments to the board is entirely secular and cannot reasonably be interpreted as implicating issues of religious doctrine or practice or of church government, policy or administration. Put another way, nothing in the pertinent bylaw provision indicates that an analysis of the claims raised by the plaintiffs would require a court to go beyond the secular legal principles governing corporations and the interpretation of bylaws and to resolve impermissible ecclesiastical issues. Section 7 of article V of FACS' bylaws provides that "[t]he Governance Committee shall submit [the] slate of [nominated] candidates to the President of the Corporation for submission to the Archbishop who shall make appointments to the Board

of Trustees." Given this plain and unambiguous language—stating that the committee "shall submit [the] slate of candidates," and the archbishop "shall make appointments to the Board"—we conclude that a civil court can adjudicate the plaintiffs' claims simply by interpreting the secular language of the bylaws without ever reaching issues of religious doctrine or practice or of church government, policy or administration. See *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 48, 148 A.3d 1123 (2016) ("[A] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.)), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017).

Appellate courts in other jurisdictions have reached similar conclusions when weighing analogous claims for declaratory relief in corporate governance disputes arising in a religious context, and we find their decisions instructive. For instance, in *Bookout* v. *Shelley*, Docket No. 02-22-00055-CV, 2022 WL 17173526 (Tex. App. November 23, 2022), the Texas Court of Appeals was faced with "an internecine battle for control of [a church]"; id., *1; in which the plaintiffs in the underlying action sought, inter alia, a declaratory judgment resolving "whether the [defendants] or [the plaintiffs] are the rightful directors of [the board of the corporation that operated the church]." Id., *7. The court in *Bookout* determined that, on the basis of its "examination of the specific declaratory relief sought," "this cause of action is, at its core, a dispute over corporate governance, not religious or doctrinal matters," because "resolution of this cause of action does not turn on matters of an ecclesiastical or inherently religious nature but, rather, hinges on the interpretation and verification of corporate documents—including [the church's] bylaws and

board minutes—and the [state law governing corporations] . . . ." Id.

Moreover, the court reasoned that, "[w]hile [the plaintiffs] seek a declaratory judgment that '[one of the plaintiffs, Jonathan Shelley] is the duly appointed and ordained [p]astor of [the church],' this determination turns on the antecedent issue of whether [the defendants] or the [plaintiffs are the] true board of directors [of the corporation operating the church]. If, as [the plaintiffs] claim, [the defendants] are not the duly elected members of [the corporation's] board, then the termination letter that they caused to be sent to [Shelley] would be of no force or effect, and since [Shelley's] original appointment as [the church's] pastor in 2019 is not in dispute, he would therefore continue to be 'the duly appointed and ordained [p]astor of [the church].' Thus . . . the trial court will not be required to involve itself in the inherently ecclesiastical process of determining whether the church members desire to sever their relationship with their pastor; rather, the court will only be required to resolve the antecedent issue of corporate governance, which, as noted above, can be accomplished by applying neutral principles of law to review and verify [the corporation's] organizational documents and corporate records, including board minutes." Id., *8. Accordingly, the Texas Court of Appeals held that the lower court was permitted to exercise jurisdiction over the matter given that "the resolution of this central issue will involve examining and verifying corporate records and organizational documents and evaluating the credibility of witness testimony regarding corporate actions all of which can be done on a purely secular basis by applying neutral principles of law." Id., *7.

Similarly, in *Schwimmer* v. *Welz*, 56 App. Div. 3d 541, 542, 868 N.Y.S.2d 671 (2008), the plaintiffs requested a judicial declaration that they "are the lawful members

of the [b]oard of [t]rustees of [a religious organization]." In that case, New York's intermediate appellate court reversed the trial court's determination that it lacked jurisdiction pursuant to the first amendment, stating: "On the record before us, we cannot conclude that the issues in this case are nonjusticiable. Membership on the [b]oard [of trustees] is not conditioned upon any religious criteria, and the issues raised with respect to the challenged status of the various individuals claiming to be [b]oard members concern only notice require-ments, requisites for the conduct of [b]oard meetings and elections, and requirements for amending corpo-rate documents. These questions can be determined by reference to [the religious organization's] secular bylaws, and in accordance with neutral principles of law, such as those set forth in [state law governing corporations] . . . . Although matters relating to the religious leadership of the community may explain why members of the [b]oard [of trustees] took certain actions, the case turns not on the motivations of the [b]oard members but on the actions they took as those actions relate to the relevant provisions of corporate governance and statute."[15] (Citations omitted.) Id., 543–44.

---

[15] See also *Jackson* v. *George*, 146 A.3d 405, 417 (D.C. 2016) (affirming trial court's determination that it had subject matter jurisdiction over dispute between former church congregants and church when trial court "did no more . . . than appl[y] neutral principles of law to resolve a dispute about whether the . . . [claimed] [board of trustees] had been duly elected in accordance with church bylaws" (internal quotation marks omitted)); *People ex rel. Muhammad* v. *Muhammad-Rahmah*, 289 Ill. App. 3d 740, 744–45, 682 N.E.2d 336 (The trial court's determination that it lacked jurisdiction over a dispute between a religious corporation and its former corporate officer regarding removal of the plaintiff as president and chairman of the corporation's board of directors was reversed because "the court was not required to examine religious doctrine or practice to determine whether [the] plaintiff had been properly removed as president and chairman of the board of directors of the corporation. The corporation's bylaws and the statute under which it was organized clearly set forth the procedure for appointment and removal of directors, the notice requirements for directors' meetings, and other attendant corporate matters. These instruments consti-

The relief requested by the plaintiffs in the present case—the interpretation of FACS' bylaws and the invalidation of certain appointments to FACS' board as unauthorized by its bylaws—is akin to the relief requested by the plaintiffs in *Bookout* and *Schwimmer*, and, as in those cases, resolving the corporate governance dispute presented by the parties in the present case will require "examining and verifying corporate records and organizational documents and evaluating the credibility of witness testimony regarding corporate actions, all of which can be done on a purely secular basis by applying neutral principles of law." *Bookout* v. *Shelley*, supra, 2022 WL 17173526, *7. In the present case, as in *Bookout*, granting the relief requested by the plaintiffs, if warranted, would not interfere with the religious decision-making of the archbishop, but simply would render

---

tuted the rules which the members of the mosque chose to be bound by before the dispute arose. The allegations in [the] plaintiff's petition required the court to decide only whether those procedures had been complied with, and not whether the plaintiff was living as a good Muslim. . . . Accordingly, we hold that the trial court should have utilized the 'neutral principles of law' analysis in ruling on [the] plaintiff's petition, requiring only the application of objective [l]egal principles to the corporation's governing documents and the interpretation of [state law governing corporations], without reference or reliance upon Islamic religious doctrine."), appeal denied, 174 Ill. 2d 592, 686 N.E.2d 1172 (1997); *Esformes* v. *Brinn*, 52 App. Div. 3d 459, 462, 860 N.Y.S.2d 547 (2008) (first amendment did not deprive trial court of jurisdiction over action by members of religious organization challenging "validity of . . . elections [to corporation's board of directors] . . . in contravention of the [corporation's] bylaws"); *Johnson* v. *Antioch United Holy Church, Inc.*, 214 N.C. App. 507, 511, 714 S.E.2d 806 (2011) ("Whether [the] [d]efendants' actions were authorized by the bylaws of the church in no way implicates an impermissible analysis by the court based on religious doctrine or practice. . . . Rather, the claim in this case requires the trial court to apply neutral principles of law to determine whether, inter alia, [the] [d]efendants complied with [state law governing corporations]." (Citation omitted.)); *Masterson* v. *Diocese of Northwest Texas*, 422 S.W.3d 594, 608 (Tex. 2013) (trial court could exercise jurisdiction and apply neutral principles of law in property dispute between diocese and local church where property used by local church was held by nonprofit corporation because "the corporation has a secular existence derived from applicable Texas law and the corporation's articles of incorporation and bylaws," and its bylaws governed issue presented).

any appointments he made to the board in his entirely secular capacity as a corporate officer for FACS to be of "*no force or effect*" if they were unauthorized by the bylaws or state law. (Emphasis added.) Id., *8. Certainly, as the court in *Schwimmer* recognized, a dispute over corporate governance, specifically the validity of appointments to and actions undertaken by a religious organization's board of directors, can be adjudicated by applying neutral principles of law if the issue "*turns not on the motivations of the [b]oard members but on the actions they took as those actions relate to the relevant provisions of corporate governance and statute.*" (Emphasis added.) *Schwimmer* v. *Welz*, supra, 56 App. Div. 3d 544.

The issues presented in this action do not concern why the archbishop selected certain individuals for the board but, rather, whether, under the bylaws and our General Statutes, which govern the validity of actions undertaken by FACS' corporate officers, he was authorized to appoint individuals who had not been nominated by the committee of FACS, which, as we have stated in this opinion, is not a part of the AOH. Consequently, although a court's resolution of the issues presented in the plaintiffs' action will have some practical effect on determining the identity of individuals who are selected to be members of the board of an alleged religious organization and, potentially, could result in the invalidation of appointments made by the archbishop, an adjudication of the underlying corporate governance dispute is permissible because it will require the court to resolve only the "*antecedent issue of corporate governance*, which . . . can be accomplished by applying neutral principles of law"; (emphasis added) *Bookout* v. *Shelley*, supra, 2022 WL 17173526, *8; to examine corporate records and witness testimony and ultimately decide whether the archbishop's appointments to the board were valid under FACS' bylaws and state law.

See id., *7 (trial court properly could exercise jurisdiction and apply neutral principles of law to resolve underlying corporate governance dispute, even though "the outcome of this cause of action will, in essence, decide who has authority to manage and act on behalf of [a religious organization that operates a church] . . . [b]ecause the resolution of this cause of action does not turn on matters of an ecclesiastical or inherently religious nature but, rather, hinges on the interpretation and verification of corporate documents—including . . . bylaws and board minutes—and the [state law governing corporations]"). Simply put, the dispute in the present case is not a "religious controversy"; *Jones* v. *Wolf*, supra, 443 U.S. 608; rather, it is a corporate governance controversy that involves an alleged religious organization, FACS, and a religious figure, the archbishop.

Indeed, the defendants concede that the plaintiffs' claims do not require resolution of doctrinal issues but argue, nonetheless, that because of the archbishop's status in the AOH, he exercises his "religious discretion" when making decisions as to board appointments, which constitutes a matter of church governance and the governance of a presumably religious organization that a civil court cannot review. This argument fails because the dispositive question is whether the bylaws authorize the board to limit the universe of individuals who may be appointed to the board by the archbishop to only those individuals submitted for nomination by the committee. That question can be determined by applying secular legal principles.[16] A review of § 7 of

---

[16] To be clear, the basis for the archbishop's appointments and whether those appointments can be based on religious reasons is not before this court. The archbishop undeniably serves as a source of religious authority for the AOH; however, as discussed previously in this opinion, nothing in the record supports the conclusion that his role as a corporate officer for FACS is a religious one. Given that, we cannot agree with the defendants' argument that, essentially, when the archbishop acts as a corporate officer for FACS, he does so in an inherently religious manner by virtue of his

article V of the bylaws reveals that the provision does not delineate the decision-making process that should be employed when making appointments to the board and, thus, does not address the decision-making process employed by any person, in any capacity. Instead, it merely establishes the role of the committee in the corporate procedure for making such appointments, without any reference at all to the qualitative reasoning that guides such decisions. As a result, the relief requested by the plaintiffs in this action requires a court to decide only what the process is for making appointments to the board according to the bylaws and whether certain board appointments were valid pursuant to the bylaws, without necessitating any inquiry whatsoever into the reasons behind *why* such appointments were made. Therefore, the defendants' assertion that granting the relief requested by the plaintiffs would improperly interfere with religious decision-making of the archbishop is unavailing.[17]

status. If we did conclude as much, on the basis of the archbishop's status alone, our holding would effectively accord a special status to certain corporate officers of nonstock corporations, which would be untenable with the principle that disputes arising in religious contexts should be resolved by a secular court as long as no resolution of religious doctrine or practice, or inquiry into the governance, administration or policies of a church is required. See *Clough* v. *Wilson*, supra, 170 Conn. 554; see also *Masterson* v. *Diocese of Northwest Texas*, supra, 422 S.W.3d 606 ("Properly exercising jurisdiction requires courts to apply neutral principles of law to nonecclesiastical issues involving religious entities *in the same manner as they apply those principles to other entities and issues*. Thus, courts are to apply neutral principles of law to . . . corporate formation, governance, and dissolution, even when religious entities are involved." (Emphasis added.)).

[17] We note that, contrary to the defendants' assertions, nothing in the record establishes that the archbishop's appointments to the board are in any way informed by religious doctrine or practice or otherwise involve an exercise of "religious decision-making." To be sure, the defendants' counsel conceded as much at oral argument before this court. When asked what specific evidence supports the assertion that the archbishop engages in a "religious decision-making" process while making appointments to the board, counsel stated: "There is nothing in the record that helps this court understand what his process is." Furthermore, neither party argued that an evidentiary hearing is necessary on this issue. Counsel further argued that,

For these reasons, and because "every presumption favoring jurisdiction should be indulged"; (internal quotation marks omitted) *Commission on Human Rights & Opportunities* v. *Travelers Indemnity Co.*, supra, 228 Conn. App. 809; there is no first amendment barrier prohibiting the court from applying neutral principles of our state law governing corporations to the secular language of FACS' bylaws, for the purpose of declaring "the process to be followed in appointing board trustees," and determining the validity of certain appointments to the board, as requested by the plaintiffs.[18] Accordingly, we conclude that the trial court improperly dismissed the plaintiffs' complaint for lack of subject matter jurisdiction on the basis of its determination that the plaintiffs' action asks the court to entangle itself into matters of religious doctrine and practice and of church polity.

## II

In light of our determination that the court's dismissal of the plaintiffs' action for lack of subject matter jurisdiction on first amendment grounds was improper, we

despite the absence of such evidence, the court is nevertheless prohibited from adjudicating the matter because an inquiry into the archbishop's religious decision-making process would necessarily be required. That logic ignores the reality that, in the absence of any evidence in the record supporting the assertion that the archbishop's role in making appointments to the board involves an exercise of religious discretion, any consideration of the archbishop's substantive reasoning for making such appointments at this stage would amount to the improper consideration of unsupported speculation. See *Finney* v. *Commissioner of Correction*, 207 Conn. App. 133, 144, 261 A.3d 778 (recognizing that "speculation cannot support the granting of a motion to dismiss"), cert. denied, 339 Conn. 915, 262 A.3d 134 (2021).

[18] The defendants cite to *Parish of St. Paul's Episcopal Church* v. *Kovoor*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-18-6037219-S (April 10, 2019), to support their argument; however, *Kovoor* and other cases that stand for the well established principle that church disputes concerning clergy members cannot be adjudicated by civil courts; see, e.g., *Gonzalez* v. *Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16–17, 50 S. Ct. 5, 74 L. Ed. 131 (1929); *Natal* v. *Christian & Missionary Alliance*, 878 F.2d 1575, 1578 (1st Cir. 1989); are irrelevant to the matter in the present case because we are not convinced by this record that the procedure for

must next address the defendants' alternative grounds for affirmance of the judgment. Specifically, the defendants argue, as they did in their motion to dismiss, that the plaintiffs lack standing to bring this action. In doing so, they assert four separate grounds for the plaintiffs' alleged lack of standing: (1) FACS lacked standing as to counts one and two because its board did not approve the underlying action, meaning it lacked the requisite corporate authority to initiate the action, (2) the individual plaintiffs lacked standing to bring count one because those plaintiffs have not met the statutory requirements for commencing a derivative action on FACS' behalf in that they did not make a demand prior to the initiation of litigation or explain why doing so would be futile, (3) the individual plaintiffs are not aggrieved and, thus, lacked standing to bring count one, and (4) the individual plaintiffs are not aggrieved as to count two and, thus, lacked standing to bring count two.

We decline to reach the issue of standing because doing so demands resolution of disputed jurisdictional facts, which requires an evidentiary hearing. See *307 White Street Realty, LLC* v. *Beaver Brook Group, LLC,* 216 Conn. App. 750, 772 n.13, 286 A.3d 467 (2022) ("[i]t remains axiomatic . . . that in a case where the pleadings and submissions of the parties themselves necessarily raise a dispute about a fact that is central to the court's jurisdictional determination, the court has an independent duty, even in the absence of a parties' request, to hold an evidentiary hearing prior to resolving the factual dispute"). For example, these disputed facts include whether (1) FACS' board needed to or did approve the underlying action, (2) any pre-litigation demand was made by any of the individual plaintiffs, (3) any of the individual plaintiffs suffered an injury

appointing board members pursuant to FACS' bylaws is either inherently religious or has been established as being "unmistakably of ecclesiastical cognizance." *Natal* v. *Christian & Missionary Alliance,* supra, 1577.

that is separate and distinct from that suffered by any of the other individual plaintiffs or by FACS, and (4) any of the individual plaintiffs are at risk of losing a position on the board due to the defendants' conduct. Because this court cannot make factual findings, the matter must be remanded to the trial court for consideration of the standing claims raised by the defendants and for a hearing thereon.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.